**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TERRY SUTTON, et al.,** : | |
|     **Plaintiffs** : | No. 1:14-cv-1584 |
| : | (Judge Kane) |
| : | |
| **CHANCEFORD TOWNSHIP, et al.,** : | |
|     **Defendants** : | |

**MEMORANDUM**

Before the Court is Defendants' motion to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 6.) The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the Court will grant the motion in part and dismiss part of Plaintiffs' complaint without prejudice.

**I.  BACKGROUND**[1]

Plaintiffs Terry Sutton, Brenda Sutton, and Chris Cinkaj are co-owners of a business known as Cinkaj Brogue Limited Partnership. (Doc. No. 1 at ¶¶ 9-11.) Together, those three individuals and the partnership own a shopping center development in Chanceford Township, York County, Pennsylvania. (Id. ¶ 14.) Plaintiffs bring this action against Chanceford Township government and various township officials alleging that the Township's limitation on the use of this property violates their rights under the United States and Pennsylvania Constitutions.[2] (Id. ¶¶ 16-39.)

In February 2013, Plaintiffs first approached the Chanceford Township Solicitor, Defendant Timothy Bupp, about their plan to use a vacant portion of their property to open an

---

[1] The following background is taken directly from the allegations from Plaintiffs' complaint (Doc. No. 1), accepted as true for the limited purposes of the motion to dismiss.

[2] In the caption to their complaint, Plaintiffs purport to sue the individual defendants in both their official and individual capacities, but the text of the complaint brings allegations against these individuals in their official capacities only. (Doc. No. 1 at 1-4; ¶¶ 16-39.)

1

adult oriented bring-your-own-beverage cabaret featuring nude female dancers.  (Id. ¶ 78.)  On March 12, 2013, Plaintiffs filed their formal application for a Special Exception to open the cabaret, provisionally named "The Office," with the Township's Zoning Hearing Board.  (Id. ¶ 76.)  The Zoning Hearing Board draws its authority from the township's zoning ordinance, which provides that certain types of businesses must seek clearance from the township authorities before opening for business.[3]

From May 1, 2013 until July 25, 2013, the municipal authorities discussed the application with Plaintiffs and the general public at a series of meetings and hearings.  (Id. ¶¶ 82-99.)  According to the complaint, the application met with universal opposition, much of it based on the township authorities' and the community's moral objections to the cabaret.  (Id. ¶¶ 82-93.)  The township supervisors unanimously directed Defendant Bupp to attend Zoning Hearing Board meetings to oppose Plaintiffs' proposal.  (Id. ¶ 88.)  "In public deliberations during the course of the May 23, 2013[,] hearing, [Defendant municipal officials] heard requests to deny Plaintiffs' request for a Special [Exception] since Plaintiff[s'] proposed adult-oriented facility might be 'immoral,' 'criminal,' outside the 'character and nature . . . in the neighborhood,' or 'not appropriate for the community' . . . ."  (Id. ¶ 92.)  The Zoning Hearing Board voted

---

[3] The township's zoning ordinance requires that certain types of proposed land uses must obtain a "Special Exception" from the township's Zoning Hearing Board prior to opening for business. Chanceford Twp., Pa., Zoning Ordinance § 502 (2006).

"Despite its name, a special exception is not an exception to the zoning ordinance, but rather a use to which the applicant is entitled unless the zoning board determines, according to the standards set forth in the ordinance, that the proposed use would adversely effect [sic] the community." (Doc. No. 6-1 at 8) (Zoning Hearing Board decision in Plaintiffs' case).  The board may attach additional requirements on Special Exception applicants to safeguard "the public welfare."  Chanceford Twp., Pa., Zoning Ordinance § 502(2-3).

Unlike most businesses, adult oriented facilities – along with camp grounds, bed and breakfast guesthouses, contractor shops, multi-family dwellings, heavy equipment maintenance facilities, industrial parks, manufacturing facilities, mobile home parks, junkyards, kennels, solid waste disposal facilities, "intensive animal operations," and quarries – must always obtain Special Exceptions before opening in Chanceford Township. Id. § 203.1.

unanimously to deny Plaintiffs' application for a Special Exception on July 25, 2013, and the board released a written opinion on August 15, 2013, detailing the grounds for the denial under Chanceford Township's 2006 zoning ordinance. (Id. ¶ 99.) In their written decision, the Zoning Hearing Board gave four reasons for the denial of Plaintiffs' application. (Doc. No. 6-1 at 11-16.)

First, the board reasoned that the proposed cabaret's location within a shopping center did not comply with the ordinance. (Id. at 12.) Because the ordinance explicitly defines a shopping center as a collection of "stores" but does not define "store," the board consulted dictionaries for an appropriate definition of that term. (Id. at 13.) The board chose two: "[a]ny place where merchandise is offered for sale;" and "[a]ny place where goods are deposited and sold by engaging in buying and selling them." (Id.) (citations omitted). Relying on those definitions, the board concluded that the cabaret would not be a "store," because as a bring-your-own-beverage establishment, it would not sell any goods or merchandise. (Id. at 13-14.) Because the cabaret was not a "store," the board concluded that it could not operate within a shopping center. (Id.)

As to the second and third written reasons for the denial, the board determined that Plaintiffs had not carried their evidentiary burden in relation to the "ground water recharge requirements," or in relation to "sewage created by the proposed use." (Id.) For its fourth reason, the board agreed with the township and private objectors that Pennsylvania state law prohibits "lewd, immoral or improper entertainment" in establishments that are "bottle clubs," which they determined the cabaret was likely to be. (Id. at 15-16) (citing 18 Pa. Stat. § 7329.) Pennsylvania law defines a "bottle club" as a for-profit business where customers may bring their own alcoholic beverages or where alcoholic beverages may be otherwise provided, but where no alcohol may be sold on the premises. 18 Pa. Stat. § 7329. Because the board

3

determined that the proposed use would be illegal, the board determined that the proposed use would also constitute a nuisance of the sort banned by the zoning ordinance. (Id.)

After their application was denied, Plaintiffs filed a federal complaint on August 12, 2014. (Doc. No. 1.) Plaintiffs bring this lawsuit to challenge the Defendant township's zoning ordinance regarding adult oriented businesses. (Doc. No. 1.) Specifically, Plaintiffs claim that the township and its agents denied their application for a Special Exception to open an adult cabaret because of moral objections to adult entertainment, and that the ordinance and the denial of their application violate the First Amendment to the United States Constitution, among other provisions of law. (Id. ¶ 50.) Plaintiffs seek monetary damages, a declaration that the zoning ordinance is unconstitutional, and an injunction against the ordinance's future enforcement. (Id. at 26-27.) Defendants filed the present motion to dismiss Plaintiffs' complaint on October 24, 2014. (Doc. No. 6.) The motion has been fully briefed, and is ripe for disposition.

## II. LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618

F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading."[4] See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To survive a motion to dismiss, civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. Id. Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

**III. DISCUSSION**

Plaintiffs' legal theories can be broken into three claims: (1) the zoning ordinance and the denial of their zoning application violate the First Amendment protection of free expression; (2) the denial of their zoning application violates the Fifth and Fourteenth Amendment prohibition on the taking of private property for a public purpose without just compensation; and (3) the actions of the township and its affiliates violate Plaintiffs' rights to expression and liberty guaranteed by the Pennsylvania Constitution.[5] (See Doc. No. 1.) Defendants seek dismissal of

---

[4] Plaintiffs' filings do not mention this sea change in pleading standards, describing instead the more lenient pleading rules that governed litigation before Twombly. (See Doc. No. 12 at 2-3.)
[5] Plaintiffs organize their complaint into six counts: Count I raises a Section 1983 First Amendment claim, Count II concerns the Takings Clause, Count III brings additional theories of relief pursuant to the First Amendment; Count IV invokes the Pennsylvania Constitution; Count V brings a general Section 1983 claim; and Count VI requests declaratory judgment.

Plaintiffs' complaint in its entirety. (Doc. No. 6.) The Court addresses each of the three claims from Plaintiffs' complaint and Defendants' challenges to them in turn.

### A. The First Amendment

Plaintiffs assert, and Defendants concede, that because nude dancing is expressive conduct, the zoning ordinance and its application to Plaintiffs are subject to some degree of scrutiny under the First Amendment. (Doc. Nos. 1 ¶ 100; 9 at 16); see also City of Erie v. Pap's A.M., 529 U.S. 277, 289 (2000) (plurality opinion). However, the parties disagree as to whether the ordinance and its application to Plaintiffs should be subject to strict scrutiny or to intermediate scrutiny.

Permitting and licensing schemes that regulate or limit adult expression before it occurs are subject to different degrees of judicial scrutiny according to whether the regulations are accompanied by sufficient procedural safeguards and whether the regulations are content based or content neutral. City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 438-39 (2002); Young v. Am. Mini Theatres, Inc., 427 U.S. 50, 63 n.18 (1976). In general, if the scheme is content based, or if it is unaccompanied by sufficient procedural safeguards, the regime is "presumptively invalid," and subject to strict scrutiny. Alameda Books, 535 U.S. at 434; FW/PBS, Inc., v. City of Dallas, 493 U.S. 215, 229 (1990). However, if the scheme is both content neutral and accompanied by sufficient procedural safeguards, then the regime is subject only to intermediate scrutiny. See Young v. Am. Mini Theatres, Inc., 427 U.S. 50, 79-80 (1976).

In their motion and supporting briefs, Defendants argue that the ordinance is subject to only intermediate scrutiny and that it is not unconstitutional under that test because the ordinance is "reasonably well tailored," to serve a legitimate government interest. (Doc. No. 6 ¶ 7.) Defendants also argue that the Zoning Hearing Board decision is grounded in four "independent

content neutral factors." (Id. ¶ 8.) Defendants do not address whether the ordinance is accompanied by adequate procedural safeguards.

In opposition to the motion and in the complaint itself, Plaintiffs argue that the ordinance is subject to strict scrutiny, and that under strict scrutiny the ordinance is unconstitutional. (See e.g., Doc. No. 1 ¶¶ 105-107.) Plaintiffs bring a facial challenge to the ordinance, in addition to an "as applied" challenge to the Zoning Hearing Board's application of the ordinance to their particular case. (See id. ¶¶ 101-108.) Plaintiffs characterize the ordinance as content based because it permits the zoning hearing board to deny applications based on the morality of a proposed use. (Id. ¶ 104.) As to procedural safeguards, Plaintiffs argue that the ordinance grants unfettered discretion to municipal authorities, that it permits administrative officials to delay rendering a decision indefinitely, and that it "provides no assurance of prompt judicial determination as relating to First Amendment activities." (Id. ¶¶ 104-105.) As to the Zoning Hearing Board's decision in their particular case, Plaintiffs argue that the written denial is based on pretextual reasons and that the board's true reason for the denial was a moral objection to the proposed use. (See Doc. No. 12 at 5; see also Doc. No. 1 ¶ 97.)

The Court will deny Defendants' motion as to Plaintiffs' First Amendment claims because the Court cannot find, even under the more permissive lens of intermediate scrutiny, that Defendants have carried their burden on a motion to dismiss. Even were the Court to find – and at this stage, it does not – that the Chanceford ordinance and hearing board decision embody content neutral licensing regulations accompanied by adequate procedural safeguards such that intermediate scrutiny should apply, Defendants must make a factual showing that they have not made on the present undeveloped record.

Under intermediate scrutiny, a regulation passes First Amendment muster despite the incidental burden on free speech:

> [1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial government interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction of First Amendment freedoms is no greater than is essential to the furtherance of that interest.

Young, 427 U.S. at 79-80 (quoting United States v. O'Brien, 391 U.S. 367, 377 (1968)).

As to Plaintiffs' facial challenge to the ordinance, Defendants must establish that Chanceford Township has a substantial or important interest in requiring adult oriented facilities to fulfill bureaucratic requirements that other businesses do not need to fulfill. See Alameda Books, 535 U.S. at 438-39. Defendants have not attempted to make such a showing in their motion and supporting documents, so the motion fails as to Plaintiffs' First Amendment facial challenge to the ordinance.

As to Plaintiffs' as-applied challenge to the application of the zoning ordinance in their particular case, Defendants point to the four reasons given by the Zoning Hearing Board in its written denial of Plaintiffs' application for a Special Exception as evidence of Chanceford Township's important or substantial government interests. (Doc. No. 9 at 24.) However, Plaintiffs have alleged with particularity that the reasons given in the written denial were merely pretextual, and that the denial was actually based on the board members' moral objections to Plaintiffs' proposed adult facility. (See Doc. No. 1 ¶¶ 79-100); (see also Doc. No. 12 at 5) ("[T]he Zoning Board based its denial on its thinly disguised dislike for adult entertainment and nude dancers, all the while hiding behind claims of harmful effects which they have eluded [sic] to by not substantiated.") The Supreme Court has recognized the danger in permitting municipalities to put forth ostensibly neutral justifications for actions that are in truth invidious

suppression of free speech, so Plaintiffs' allegations taken as true support their as-applied challenge to the board's decision.  See City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 54-55 (1986) ("Renton has not used the power to zone as a pretext for suppressing expression[.]") (quotations omitted).

In addition, Defendants have not argued that the zoning ordinance is accompanied by adequate procedural safeguards, so Plaintiffs' claims of procedural infirmity survive as unchallenged.

In sum, Defendants have not demonstrated that Plaintiffs' allegations, taken as true, entitle them to no relief on their First Amendment claims.  The First Amendment analysis, even under intermediate scrutiny, turns upon facts that have yet to be adequately developed.  Accordingly, the Court will deny Defendants' motion to dismiss as to Plaintiffs' First Amendment claims.

### B. The Takings Clause

The Court turns next to Defendants' argument that Plaintiffs' complaint fails to state a claim for a taking of private property without just compensation.  In their complaint, Plaintiffs allege that Defendants' denial of the application for a Special Exception constituted a regulatory taking of Plaintiffs' property in violation of the Fifth and Fourteenth Amendments to the United States Constitution.  (Doc. No. 1 at 20-21.)  Plaintiffs allege that the denial of their application to open a nude cabaret led to lost prospective profits and restricted their use of their property.  (Doc. No. 1 ¶ 100.)

Defendants argue in their motion to dismiss that the denial of Plaintiffs' application did not deprive Plaintiffs of the use of their property, because the denial only prohibited a single use of the property.  (Doc. No. 6 ¶ 12.)  Defendants contend that "Plaintiffs had full use of the

property subject to the reasonable restrictions of Pennsylvania law." (Doc. No. 6 ¶ 12.) Defendants also argue that Plaintiffs did not have a protected property interest in using the property as a nude cabaret. (Doc. No. 6 ¶ 11.)

The Takings Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that government shall not take private property for public use without just compensation. U.S. Const. amend. V; Webb's Fabulous Pharmacies. v. Beckwith, 449 U.S. 155, 160 (1980). The Fifth Amendment's guarantee "preserves governmental power to regulate, subject only to the dictates of 'justice and fairness.'" Andrus v. Allard, 444 U.S. 51, 65 (1979); see also Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 124 (1978). Supreme Court precedent draws a distinction between physical takings and regulatory takings. Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 321 (2002). At least two per se categories of regulatory taking require compensation without a case-specific inquiry: (1) a regulation that works a physical invasion and (2) a "regulation [that] denies all economically beneficial or productive use of land." Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1015 (1992) (emphasis added). Typically, however, an alleged taking falls outside of those categories, and a court must conduct a case specific inquiry to determine whether or not a taking has occurred. Id.

For cases where such a case specific inquiry is necessary, the courts have identified factors to consider when determining whether a taking has occurred. These include "[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations," and the character of the governmental action. Penn Central, 438 U.S. at 124.

The Third Circuit recognized "[t]wo factors [that] appear to be of more importance to the Court than others." Rogin v. Bensalem Twp., 616 F.2d 680, 690 (3d Cir. 1980). First, if the law at issue "applies generally to a broad class of properties," a court is likely to find that no taking has occurred. Id. at 690. State and local laws affecting land use, including zoning laws, are extended broad latitude under current standards. Id. at 698. Second, "unless application of the law destroys or severely diminishes the value of the property, the Court will uphold the application," regardless of whether the law prohibits "a beneficial use to which individual parcels had previously been devoted and thus cause(s) substantial individualized harm." Id. at 690 (quoting Penn Central, 438 U.S. at 126-27). A "taking" cannot be established simply by showing that a party has been denied the ability to exploit a particular property interest at one time believed to be available for development. Penn Central, 438 U.S. at 130. Andrus, 444 U.S. at 65-66. Even government action that prohibits the most profitable use of property does not constitute a taking. Andrus, 444 U.S. at 65-66.

Applying those factors, the Court finds that Plaintiffs have not alleged facts supporting a reasonable inference that Defendants violated the Takings Clause. This case does not involve a physical taking nor does it fall within one of the two above-mentioned per se regulatory taking categories, accordingly, the Court turns to the specific allegation in Plaintiff's complaint. Plaintiffs allege that the denial of their application has imposed a substantial negative economic impact on them, but do not provide any further information as to what that substantial negative economic impact is. (See Doc. No. 1 ¶¶ 110-121.) Plaintiffs allege that the denial "deprived Plaintiffs of reasonable and foreseeable uses of the [p]roperty" and "of legitimate economic use of the [p]roperty." (Id. at ¶¶ 119-120.) Plaintiffs do not, however, argue that they have been deprived of all uses of their property, but merely one specific use: a nude dancing facility. (See

id.) Attachments to the complaint reveal that the shopping center has been used and presumably continues to be used in a number of other commercial ways. (See Doc. No. 1-8 at 9.) In addition, the ordinance is generally applicable within the township. Therefore, the Court finds that Plaintiffs fail to state a regulatory taking claim and will dismiss Count II without prejudice.

### C. The Pennsylvania Constitution

In Count IV of their complaint, Plaintiffs allege that the same set of facts that supports their federal challenges to the ordinance also states a violation of Article 1, Section 7 of the Pennsylvania Constitution. (Doc. No. 1 ¶¶ 126-128.) Plaintiffs quote Pap's A.M. v. City of Erie, 571 Pa. 375 (2002), for the proposition that the Pennsylvania Constitution's protections for expression are "broader than the First Amendment." (Doc. No. 12 at 8-9.) Defendants argue that the state law challenge must be dismissed for the same reasons that support Defendants' arguments against Plaintiffs' First Amendment challenges. (Doc. No. 9 at 31.) Defendants argue that Plaintiffs have not articulated how the Pennsylvania Constitution affords them broader protection than its federal counterpart. (Id.)

While it does appear that Article 1, Section 7 of the Pennsylvania Constitution affords greater protection to expressive conduct than the United States Constitution's First Amendment, see Pap's A.M., 571 Pa. at 399, 409, any difference is not material on this motion because, as discussed above, the Court will not dismiss Plaintiffs' challenges under the First Amendment to the United States Constitution. As such, the Court will also deny Defendants' motion to dismiss Count IV of Plaintiffs' amended complaint

.

**IV.     CONCLUSION**

For the foregoing reasons, the Court will grant in part Defendants' motion and dismiss parts of Plaintiffs' complaint without prejudice. An order consistent with this memorandum follows.[6]

---

[6] The Court will also dismiss without prejudice those legal theories that Plaintiffs mention without developing, particularly equal protection and substantive due process, because mere recitals of constitutional elements are insufficient to survive Rule 12(b)(6) challenges under modern pleading standards. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also (Doc. No. 1 ¶¶ 133(m-n)).