# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRY SUTTON, d/b/a CINKAJ** | : | **Civil No. 1:14-CV-1584** |
| **BROGUE LIMITED PARTNERSHIP,** | : | |
| **BRENDA SUTTON d/b/a CINKAJ** | : | **(Magistrate Judge Carlson)** |
| **BROGUE LIMITED PARTNERSHIP,** | : | |
| **CHRIS CINKAJ, d/b/a/  CINKAJ** | : | |
| **BROGUE LIMITED PARTNERSHIP,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CHANCEFORD TOWNSHIP, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM OPINION</u>

Currently before this Court is the defendant's motion to dismiss the plaintiffs' amended complaint pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure.  The motion has been fully briefed and is ripe for disposition.  For the reasons that follow, the motion will be granted in part and denied in part.[1]

---

[1]  This action was originally filed on August 12, 2014.  The defendants moved to dismiss the original complaint on October 24, 2014.  The District Court to which this matter was first assigned issued an opinion and order on May 16, 2016, granting the motion in part and denying it in part.  Specifically, the Court granted the defendants' motion with respect to the plaintiffs' equal protection, due process, and regulatory taking claims without prejudice.  In all other respects the motion was denied.  (Doc. 16.)  The plaintiffs filed an amended complaint on June 28, 2016.  (Doc. 19.)  On July 18, 2016, the defendants filed the instant motion that is before the Court.  On August 5, 2016, the parties consented to proceed before the undersigned in this action, and on August 19, 2016, the case was reassigned to this Court.  (Doc. 31.)  The

## I.  <u>BACKGROUND</u>

The plaintiffs in this action are a group of real estate developers and co-owners of a business known as Cinkaj Brogue Limited Partnership (referred to collectively as "plaintiffs" or "developer").  The plaintiffs own a shopping center development in Chanceford Township, York County, Pennsylvania.  The plaintiffs allege that in 2013 their partnership was denied a zoning permit necessary to open a cabaret featuring nude dancing in the shopping center.  The plaintiffs have sued Chanceford Township and several of its officials alleging that that Township's denial of their request for a special exception needed to open their intended adult entertainment business violated their rights under the United States and Pennsylvania Constitutions.  The plaintiffs' chief argument seems to be that the Chanceford Township zoning ordinance operates as a prior restraint on protected speech, and thereby violates the First Amendment.  The plaintiffs have also made a claim that the ordinance, as applied to their application, violated the plaintiffs' rights under the First Amendment, in particular by arguing that the stated bases given for denying the special exception were pretextual cover for the real reason the permit was denied, namely, a moral aversion to allowing the plaintiffs' to open a business that featured nude dancing.  The plaintiffs also claim that their rights to procedural and substantive due process were violated, and that the defendants

defendants' pending motion to dismiss became fully briefed, and ripe for disposition on October 27, 2016.

2

violated similar prohibitions contained in the Pennsylvania Constitution regarding freedom of expression.  The plaintiffs seek damages and declaratory relief.

In contrast to the complaint that they initially filed commencing this litigation, in their amended complaint the plaintiffs have attached excerpts of official records and minutes of meetings of the Planning Commission and the Zoning Hearing Board, which both parties have relied upon in their arguments supporting and opposing the defendants' motion to dismiss.  For their part, the defendants have attached to their motion the entire Zoning Ordinance and the decision of the Zoning Hearing Board issued in August 2013, both of which the defendants argue undermine the plaintiffs' legal claims in this case.

The submission of these extraneous documents with the complaint and the pending motion places the current motion to dismiss in a somewhat different light than the defendants' prior dispositive motion, and strongly suggests there is a more fulsome, and perhaps disputed, record upon which to consider some of the plaintiffs' claims and the defendants' stated defenses to those claims.  As will be noted, however, the inclusion of these materials, and reference to the underlying planning and zoning proceedings invites the Court to stray from the limited review normally applied to threshold motions to dismiss under Rule 12(b)(6).[2]  The Court

---

[2]  Although the pending motion to dismiss is indeed a threshold motion, and one that is ordinarily brought at the outset of litigation to dispose of inadequate pleadings, the Court recognizes that in this case the motion is was filed more than two years after this litigation first

finds that in large part, consideration of these materials and other evidence should await a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

The plaintiffs own property identified as 2514 Delta Road, Chanceford Township, York County.  Chanceford Township is a township organized and existing under the laws of the Commonwealth of Pennsylvania.  On April 10, 2006, the Township, acting under the Pennsylvania Municipalities Planning Code, 53 P.S. §§ 10101 et seq., adopted the ordinance known as the Chanceford Township Zoning Ordinance (the "Ordinance").  Section 513.C gives the Chanceford Township Zoning Hearing Board (the "ZHB") exclusive jurisdiction to rule on all zoning applications for uses pursuant to the Ordinance.  (Doc. 19, Ex. L.)  Section 513.C.2 specifies that collectively and individually, the members of the ZHB have the authority "to hear and decide special exceptions upon which the Board is required to pass" under the Ordinance.  (*Id.*, Ex. O.)

The plaintiffs' property is located in the General Commercial Zone in the Township and has been developed into a small shopping center that includes

---

commenced.  Although this does not change the applicable legal standards governing the Court's review, the Court is mindful that for the parties this is a dispute that has been pending without resolution for a considerable period of time.  For the reasons discussed, the Court finds that many of the plaintiffs' claims remain incapable of being properly disposed of through a Rule 12(b)(6) motion, notwithstanding the defendants' insistence otherwise.  Nevertheless, the Court is committed to working with the parties to ensure that the disputes in this action are addressed and resolved promptly and fairly, and will be scheduling a telephone conference to address the scope of this dispute and a reasonable timetable for joining the disputed legal issues so that they may be considered and resolved on an appropriate record without any unnecessary delay.

businesses offering goods for sale, as well as service businesses that include a bank. (*Id.*, ¶ 56 and Ex. D.)  The Ordinance provides that the General Commercial Zone in the Township allows for the use of property for an "Adult Oriented Facility" only under Special Exception as shown in Table 203.1 and Article IV of the Ordinance. (*Id.* at Exs. B and C.)

The Ordinance defines "Adult Oriented Facility" to mean any "establishment open to the general public or a private club open to members except person under the age of eighteen (18) years, which is used and occupied for one (1) or more of the following activities: . . . ADULT CABARET – An establishment, club tavern, restaurant, theater or hall which features live entertainment distinguished or characterized by an emphasis on sexual conduct or sexually explicit nudity." (Doc. 21, Ex. 1, § 602.)[3]  The plaintiffs' intended to use the property to operate an Adult Cabaret.

Section 407 of the Ordinance specifies that the manner of operation of an "Adult Oriented Facility" is regulated under the Ordinance. (*Id.*, Ex. A.)  Section 407 sets forth the general and specific requirements that must be met in order for members of the ZHB to approve a special exemption for an "Adult Oriented Facility" under the Ordinance. (*Id.*, Ex. A.)  These requirements provide that no materials, merchandise, film or service offered for sale or view shall be displayed

---

[3] Also included among the businesses defined as "Adult Entertainment Facilities" are Adult Book Stores, Adult Massage Parlors, and Adult Theaters. (*Id.*)

or represented outside of the building; that all Adult Oriented Facilities will be windowless or have opaque coverings over the windows and doors; that no sign shall be erected depicting the types of goods or services offered in the establishment; that signage be posted restricting access to adults only and warning others that they may be offended upon entry; establish parking requirements; and include restrictions on locating Adult Oriented Facilities at least 1,000 feet from schools and 500 feet from churches.  (Doc. 21, Ex. 1, § 407.)

Section 502 of the Ordinance provides the guidelines that govern uses permitted by special exception, and requires, *inter alia*, that the proposed use meets drainage requirements; that the proposed use will not create traffic congestion; that the proposed use has made adequate provision for disposal of sewage; and that the proposed use is "in harmony with the orderly and appropriate development" of the zone.  (Doc, 21, Ex. 1, § 502.)  Section 502.2 of the Ordinance, in turn, sets forth the requirements for special exceptions and provides that "For any use permitted by special exception, a special exception must be obtained from the Zoning Hearing Board."  (*Id.*)  That section further provides that "All applicants for a special exception shall be referred to the Planning Commission for a report.  The Chairman of the Planning Commission shall insure that a copy of its report is delivered to the Township Secretary for inclusion in the permanent record of the application, to the Zoning Officer and to the Zoning Hearing Board."  (*Id.*)

6

The Ordinance also sets forth a number of specific requirements that govern hearings for special exceptions conducted by the ZHB, and purports to confer certain rights upon applicants or appellants.  Among the requirements is one that requires the ZHB to hold a hearing within 60 days of the date of the applicant's request for a hearing, and provides that when a hearing is not held within this 60-day period, a decision shall be "deemed to be rendered in favor of the applicant, unless the applicant has agreed in writing or on the record to an extension of time." (Am. Compl., ¶ 61 and Ex. R.)

On February 11, 2013, plaintiff Terry Sutton asked the Chanceford Township Solicitor, Timothy Bupp, about the prospect of opening an adult entertainment facility in the Township, specifically at the property, with live nude dance performances.  The solicitor invited Sutton to attend a meeting of the Board of Supervisors that night.  (Am. Comp., ¶ 91.)  At that meeting, plaintiff Sutton told the Board that there was someone interested in subleasing space in the property to private groups with BYOB privileges.  Solicitor Bupp informed Sutton that pursuant to the Ordinance, the plaintiffs "would need to apply to the Zoning Hearing Board for special exception for any proposed restaurant or commercial use at which time the board would determine the conditions of use." (*Id.*, ¶ 92.)

On March 12, 2013, the plaintiffs submitted an application for a special exception pursuant to Section 203 of the Ordinance to the ZHB seeking to make

use of the property as an Adult Oriented Facility.  (Am. Compl., Ex. F.)  The application specifically disclosed the plaintiffs' intention to use the property to operate as an "Adult Cabaret," as defined in the Ordinance, "featuring live nude dancers." (Am. Compl., ¶ 80.)  The application disclosed the plaintiffs' intention to "not offer materials, merchandise, film, or service for sale, rent, lease, loan or for view outside of a building or structure." (*Id.*, ¶ 81.)  The application stated that the plaintiffs intended to "establish a membership requirement for entry into the facility and with ten (10) separate rooms for private entertainment." (*Id.*, ¶ 82.)  The application contained additional information with respect to the décor to be implemented, discretion with respect to signage, signs restricting admission to adults, the distance of the facility from any school or church, and regarding improvement of parking spaces in conformity with the Ordinance.  (*Id.*, ¶¶ 83-87.)

The plaintiffs' application was first formally addressed on April 16, 2013, during a Township Planning Commission meeting.  At that time, Terry Sutton and the property owner's attorney, Chris Vedder, explained specifics of the application and its exhibits and answered questions asked by the Commissioners and the general public.  (Am. Compl., Ex. V.)  During the public comment period that followed, the chair of the Planning Commission, John Shanbarger, referred to Section 102 of the Ordinance that states that the purpose of the Ordinance is the public welfare, safety, morals and general welfare and opined that "There is

nothing stated tonight that you are meeting very many of these, if any." (*Id.*, ¶ 96 and Exs. V, U.)  Following two hours of testimony and dissenting opinions from opponents of the application, many of whom offered morality-based arguments in their opposition, the Chanceford Township Planning Commissioners unanimously recommended that the ZHB reject the plaintiff's application for permission to open an adult-oriented facility.  (*Id.*, ¶ 97 and Ex. V.)

During a meeting of the Township Planning Commission on or around May 21, 2013, defendant Jeff Koons, a zoning officer for the Township, requested the help of the Planning Commission to determine which sections of the Ordinance were relevant to proving noncompliance with the plaintiff's application for a permit.  (*Id.*, ¶ 100 and Ex. X.)

During a meeting of the ZHB on May 23, 2013, defendant Bupp, the Township Solicitor, provided legal advice to members of the ZHB, and advised them that their consideration of whether or not to grant the special exemption must focus on determining whether the proposed use of the property was a permitted use under the Ordinance, and whether the proposed use was of the same general character as other uses permitted in the applicable zone.  (*Id.*, ¶ 107.)  During the public deliberations that took place during this meeting, attendees urged the application be denied because the proposed cabaret was "immoral" or "criminal"

or ran afoul of the "character and nature . . . in the neighborhood" or was "not appropriate for the community." (*Id.*, ¶ 108.)

The ZHB met on June 17, 2013, during which time the plaintiff, through counsel, argued that denial of the special exemption would constitute regulation of the proposed use based on the content of expressive conduct or speech, which would violate the United State Constitution. (*Id.*, ¶111.)  A little more than a month later, on July 22, 2013, Terry Sutton appeared before the ZHB again, during which time the ZHB heard additional complaints by community members about the proposed use of the property. (*Id.*, ¶ 113.)  On or around July 25, 2013, the ZHB voted unanimously to reject the plaintiffs' application for a special exemption. (*Id.*, ¶114.)  On August 15, 2013, the ZHB issued a written decision that memorialized the denial. (*Id.*, ¶115.)  This decision was issued 157 days after the plaintiffs' March 12, 2013 application. (*Id.*, ¶ 116.)  The plaintiffs assert that the denial of their application was improper, untimely and unconstitutional, and that it had the effect of depriving them of "presenting the Constitutionally protected speech and expression they desire to provide," (*Id.*, ¶ 117), causing them financial harm.

The plaintiffs initiated this action by filing a complaint on August 12, 2014. (Doc. 1.)   The complaint named as defendants the Township, its Solicitor, members of the Township's Planning Commission, Zoning Hearing Board, and

Board of Supervisors, a Zoning Officer and the Township Engineer.  The plaintiffs sought a declaration that the denial of the requested permit was unconstitutional and that the Ordinance itself was facially unconstitutional as an unlawful restraint on protected expressive activity.  The plaintiffs additionally sought damages for the claimed constitutional violations, including violations of the First and Fourteenth Amendments of the United States Constitution, a claim for a regulatory taking, and violations of the Pennsylvania Constitution.  Following the District Court's ruling on the defendants' initial motion to dismiss, the plaintiffs filed an amended complaint on June 28, 2016.  The defendants moved to dismiss the amended complaint on July 18, 2016, and that motion became ripe on October 27, 2016.  The parties have consented to have this matter assigned to United States Magistrate Judge for all further proceedings, and the matter was accordingly reassigned to the undersigned on August 5, 2016.

## III.   <u>STANDARD OF REVIEW</u>

A motion to dismiss tests the legal sufficiency of a complaint.  It is proper for the court to dismiss a complaint in accordance with Rule 12(b) (6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b) (6).  When reviewing a motion to dismiss, the court "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately

determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In reviewing a motion to dismiss, a court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

In deciding whether a complaint fails to state a claim upon which relief can be granted, the court is required to accept as true all factual allegations in the complaint as well as all reasonable inferences that can be drawn from the complaint. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). These allegations and inferences are to be construed in the light most favorable to the plaintiff. *Id.* However, the court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Further, it is not proper to "assume that [the plaintiff] can prove facts that [he] has not alleged. . ." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following the rule announced in *Ashcroft v. Iqbal*, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint

must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  *Id.*  To determine the sufficiency of a complaint under the pleading regime established by the Supreme Court, the court must engage in a three step analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal*, 556 U.S. at 675, 679).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief" and instead must "'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

## IV.   <u>DISCUSSION</u>

### A.    **Plaintiffs' First Amendment Claims**

The plaintiffs argue that the Township's Zoning Ordinance, and its application to their request for a special exception to open an Adult Oriented Facility as defined under the Ordinance, violated their rights under the First Amendment to the United States Constitution.  The plaintiffs argue that the Ordinance itself operates as a prior restraint upon protected expressive activity, and

the plaintiffs contend that the Township's denial of the application was itself unconstitutional because it was based on sham justifications that were pretext for an impermissible effort to disallow the plaintiffs from opening a business that featured protected expressive activity.

The Township disputes both of these assertions, and argues that the Court should decide, on the pleadings and through reference to extraneous materials, that the plaintiffs' facial and as-applied challenges to the Ordinance are meritless under prevailing Supreme Court precedent.  According to the Township, this case boils down to a straightforward dispute over a zoning decision,  a customary function of local municipal governance, and in no way implicates or runs afoul of the First Amendment.  The defendants further insist that the zoning decision in this case had nothing at all to do with the plaintiffs' intended use of the property as a nude dancing venue, and was focused solely on matters such as water usage and potential secondary effects relating to the proposed use.

Ninety years ago, the United States Supreme Court "broadly sustained the power of local municipalities to utilize the then relatively novel concept of land-use regulation in order to meet effectively the increasing encroachments of urbanization upon the quality of life of their citizens." *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 73 (1976) (citing *Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926)) (Powell, J. concurring).  In finding that zoning regulations were a

permissible exercise of the police function, the Court recognized the practical considerations that justified such power:   "[W]ith the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities." *Euclid*, 272 U.S. at 386-87.   However, in order for such regulations be permissible, the Court established some initial boundaries, noting that restrictions on the free use of land must find justification in "some aspect of the police power, asserted for the public welfare." *Id.* at 387.   Courts were enjoined to judge the legitimacy of restrictions by referring to all of the relevant surrounding circumstances and conditions, with a municipality's legislative judgment to control in cases "in which the validity of a particular zoning regulation is 'fairly debatable.'"   *Young*, 427 U.S. at 74 (quoting *Euclid*, 272 U.S. at 387) (Powell, J., concurring).

The validity of the police power to implement and enforce local zoning ordinances has been challenged, however, in a number of ways, and particularly in the context of First Amendment expressive conduct that comes into conflict with land-use regulation and municipal planning efforts.   These challenges have frequently arisen in cases similar to the present case, and involve zoning ordinances that prohibited, curtailed or substantially regulated the existence or operation of adult entertainment venues such as theaters, bookstores, cabarets, and

similar establishments.  Although there have been many decisions in this field that have shaped the legal landscape with respect to the validity of zoning regulations that place some degree of burden on protected First Amendment activity or business, the law in this field can be difficult to synthesize with clarity.  This lack of clarity is reflected in the thorough and thoughtful briefs filed by the parties in this case, which often come to quite different conclusions about these legal precedents and their application in this particular case.

The difficulty in applying the precedent in this field to the claims in this case is furthered heightened by the procedural posture of this action.  The defendants have now twice filed motions to dismiss the plaintiffs' claims on the pleadings alone, arguing that the claims fail adequately to state a claim for relief.  In support of this argument, however, the defendants invite the Court to consider matters outside of the pleadings, in particular the Zoning Ordinance itself and the written decision issued by the ZHB, as conclusive proof that the decision to deny the plaintiffs' application for a special exception was not only constitutionally sound, but in fact had nothing whatsoever to do with the plaintiffs' intention to feature nude dancing.  Upon consideration, the Court finds that the motion to dismiss the plaintiffs' First Amendment claims cannot be so easily resolved at this stage of the litigation.

For reasons briefly discussed below, the Court finds that even if it were appropriate to consider the excerpts that the plaintiffs attached to the amended complaint, and that the defendants have offered in support of their motion, the plaintiffs' claims are not capable of being disposed of through an attack on the allegations in the complaint itself.  Instead, the plaintiffs' First Amendment claims – both as a facial attack on the ordinance and as applied to the plaintiffs' application for a special exception – should be considered through a developed motion for summary judgment.

As a threshold matter, the Supreme Court has held, and there really is no dispute between the parties, that nude dancing expressive conduct that "falls only within the outer ambit of the First Amendment's protection."  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (plurality) (citing *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565-66 (1991); *see also Schad v. Mount Ephraim*, 452 U.S. 61, 66 (1981) ("nude dancing is not without its First Amendment protections from official regulation.").

Although nude dancing and other forms of erotic entertainment are entitled to some degree of First Amendment protection, the law is also clear that cities and municipalities are not powerless to enact regulations that impose some burdens on such establishments, provided that the regulations are appropriately tailored.

17

The Supreme Court has long held that "regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46-47 (1986); *see also Mitchell v. Comm'n on Adult Entertainment Establishments of State of Del.*, 10 F.3d 123, 130 (3d Cir. 1993). "On the other hand, so-called 'content-neutral' time, place and manner regulations are acceptable to long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Renton*, 475 U.S. at 47. In other words, regulations that are enacted to restrain speech based on its content are subject to strict scrutiny, whereas content-neutral regulations are subject to intermediate scrutiny.

Additionally, with respect to businesses that "purvey sexually explicit materials, zoning ordinances designed to combat the undesirable secondary effects of such businesses are to be reviewed under the standards applicable to 'content-neutral' time, place, and manner regulations. *Id.* at 49; *see also Mitchell*, 10 F.3d at 130 ("[I]f the regulation's predominate purpose is the amelioration of socially adverse secondary effects of speech-related activity, the regulation is content-neutral and the court must measure it against the traditional content-neutral time, place, and manner standard."). The Third Circuit Court of Appeals has interpreted this guidance to mean that under *Renton*, "reasonable time, place, and manner

regulations of protected speech are valid if: (1) they are justified without reference to the content of the regulated speech; (2) they are narrowly tailored to serve a significant or substantial government interest; and (3) they leave open ample alternative channels of communication." *Mitchell*, 10 F.3d at 130.

In keeping with these standards as they developed, the Supreme Court has on a number of occasions found that municipalities may regulate in this field provided that the regulations in question are aimed at avoiding negative secondary effects rather than squelching speech or expressive activity based on its arguably offensive content. *See, e.g., City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002) (reversing and remanding lower court rulings that invalidated city ordinance prohibiting operation of multiple adult businesses located in a single building, finding that the city could lawfully rely upon earlier factual findings to justify its regulations); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 570-71 (1991) (upholding law prohibiting public nudity as applied to adult entertainment venues as part of the part of the police power to provide for public health, safety and morals); *Renton*, 475 U.S. 41 (1986) (upholding ordinance prohibiting adult theaters from locating within 1,000 feet of any residential zone, church, park or school); *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50 (1976) (upholding Detroit ordinance prohibiting adult theater within 1,000 feet of any two other "regulated uses" or within 500 feet of any residential zone).

Notably, in the foregoing cases, courts typically were presented with a record of the bases for the municipal ordinances being challenged. In each case cited, the Supreme Court found that some record evidence supported the municipalities' stated efforts to combat secondary effects of adult entertainment venues on the surrounding community. For example, in *Renton*, the Court held that the municipality was permitted to rely on evidence that is "reasonably believed to be relevant" for demonstrating a connection between the speech being regulated and a substantial, independent government interest. 475 U.S. at 51-52. In that case, the city intended its ordinance to combat crime rates, protect property values, and uphold the quality of the city's neighborhoods. *Id.* at 47-49. In *Alameda Books*, the City of Los Angeles was seeking to combat crime rates that were found by one earlier study to be correlated to having adult businesses in proximity to one another, and the Supreme Court held that the city could appropriately rely on such evidence in order to enact a regulation furtherance of an important government interest despite some limitations in the study. 535 U.S. at 438-39. In Alameda Books, the plurality opinion made clear that municipalities must be able to articulate some reasoned basis for its regulatory action. Thus, interpreting Renton, the plurality observed that a municipality "may rely on any evidence that is 'reasonably believed to be relevant' for demonstrating a connection between speech and a substantial, independent government interest." 535 U.S. at 438

(citing *Renton*, 475 U.S. at 51-52).  The Court cautioned that this does not mean "that a municipality can get away with shoddy data or reasoning."  *Id.*  Instead, "[t]he municipality's evidence must fairly support the municipality's rationale for its ordinance."  *Id.*  Plaintiffs may, if they are able, "cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings."  If plaintiffs succeed in doing so, "the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance."  *Id.* at 439 (citing *Erie v. Pap's A.M.*, 529 U.S. 277, 298 (2000) (plurality opinion).  Although a municipality's burden may be low, and its decisions owed deference, there is still a limited evidentiary basis that is required in considering whether or not a particular regulatory ordinance was properly enacted and applied as to proposed expressive conduct.

The Township argues that the regulations that its Zoning Ordinance place upon nude dancing should be considered content-neutral, but in making this argument the Township argues only that its Ordinance is focused upon land usage and has only minimal impact on speech.  The Township notes that the Ordinance does not purport to ban nude dancing or other forms of "adult entertainment," but merely regulates where such businesses may operate, and furthers a substantial governmental interest.  On the current record, however, it is not entirely clear that

21

the Zoning Ordinance is actually content-neutral, since it appears that it imposes regulations on a particular category of expressive activity that is not imposed on others.  The Township notes that numerous other businesses that do not involve speech or expressive activity also must obtain a special exception to operate within the General Commercial district, but this fact does not mean that the regulation imposed upon "Adult Entertainment" in the Township are content-neutral, since it appears that the special exception requirement is imposed precisely because of the nature of the expressive activity, or the goods or services that are purveyed in these businesses.  Nevertheless, it is also not clear that this really matters, since in *Renton* the Court recognized that regulatory ordinances of this type may be deemed content-neutral where they do not ban the expressive activity altogether, but merely imposes some time, place or manner restriction on it – which is essentially what the special exception requirement purports to be.  *Renton*, 475 U.S. at 48; *Ben Rich Trading, Inc. v. City of Vineland*, 126 F.3d 155, 161 (3d Cir. 1997).

However, even if the regulation requires adult entertainment businesses to apply for and obtain a special exception in order to operate, the municipality still bears a relatively light burden of presenting evidence of " 'incidental adverse social effect that provides the important governmental interest justifying' the content-neutral regulation and must be able to 'articulate and support its argument

22

with a reasoned and sustained basis demonstrating the link between the regulation and the asserted governmental interest." *Ben Rich Trading*, 126 F.3d at 161 (quoting *Phillips v. Borough of Keyport*, 107 F.3d 164, 173 (3d Cir. 1997) (en banc). Although a municipality need not demonstrate such justification "at the time of adoption" of the ordinance, or "before taking [legislative] action," *Phillips*, 107 F.3d at 178, the municipality still must "shoulder the burden of building an evidentiary record that would support a finding that . . . [governmental] interests would be jeopardized in the absence of an ordinance". *id.* at 173.    The municipality may build such a record after it enacts the ordinance, but it nevertheless still bears this burden, however minimal.

And that is what makes it difficult to embrace the Township's argument on a threshold motion to dismiss, which invites the Court to stray beyond the pleadings and to make factual findings based on its review of the Zoning Ordinance itself, or on the transcript of the ZHB decision denying the plaintiffs' application for a special exception. As noted, in many cases of this type, the First Amendment challenges were properly resolved upon an evidentiary record, and at this point in the case one has not been properly developed or presented. The Zoning Ordinance itself, which the plaintiff has referred to in select passages and which the Township has submitted in its entirety, appears to be silent on the justification for the permitting required, or the reasons that informed the Township's decision to

23

impose special requirements on the operators of adult entertainment businesses as opposed to other businesses such as bookstores and movie theaters that sell ostensibly unobjectionable content, services or performances.   In short, the defendants have not referred to any evidence that the Township may have used when it enacted the Zoning Ordinance in 2006, and any reference to after-the-fact justifications would have the Court look beyond the pleadings to consider alleged evidence that is more appropriately considered through a motion for summary judgment where evidence may be offered.

The defendants would also have the Court resolve the motion to dismiss by relying on the reasons that are set forth in the decision of the ZHB, which indicate that the plaintiffs' application was denied because they failed to establish to the Township's satisfaction that they had a plan for water and sewerage, and because the Township determined that to operate within the shopping center as proposed, the use must be a "store," which the ZHB purportedly found means that the business must have goods for sale.   Additionally, the ZHB noted in its decision concerns that operating the proposed nude dancing business as a BYOB establishment would be unlawful under Pennsylvania law and would otherwise constitute a nuisance.   (Doc. 21, Ex. 2.)

The ZHB's decision unquestionably appears to set forth a number of reasons given for denying the application for a special exception, but two considerations

24

give the Court pause in relying upon these stated reasons as a justification to grant the motion to dismiss.  First, the defendants are urging the Court to rely on matters outside of the pleadings to conclude that the plaintiffs have failed to state a claim upon which relief may be granted.  As noted, courts generally must confine their assessment of the adequacy of the pleadings to the pleadings themselves. Although there are some exceptions to this general rule, and may permit the consideration of indisputably authentic documents, *Oshiver v. Levin*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994), it is generally the practice in federal court to consider such arguments upon a properly-supported motion for summary judgment, where evidence can be assessed appropriately.

Second, the plaintiffs have argued that the ZHB's decision was, in fact, pretextual cover for the real reason that the application for a special exception was denied, namely, moral objections to nude dancing.  In this regard, the plaintiffs have alleged that moral objections predominated the hearings on their application for a special exception, (Am. Compl., ¶ 113), and have asserted that officials specifically solicited help from the Planning Commission in determining which sections of the Zoning Ordinance would be relevant in order to make the case for non-compliance when the matter was presented to the ZHB.  (Am. Compl., ¶100.) The plaintiffs also argue that the stated justifications for denying their application are highly suspect, since numerous businesses within the shopping center could not

be considered "stores", and because the plaintiffs presented more than adequate evidence with respect to the water and sewerage issues that were cited as reasons for denying the application.

Upon consideration, the Court finds itself in much the same position as it was in when the defendants moved to dismiss the original complaint. In its decision, the Court observed that with respect to the defendants' facial challenge to the Zoning Ordinance, the defendants had not offered any evidence to support its argument that it had an articulable interest in requiring adult-oriented businesses to meet bureaucratic requirements that other businesses do not need to fulfill. *See Alameda Books*, 535 U.S. at 438-39. That remains unchanged, as the defendants have not come forward to make a threshold showing of why adult-oriented businesses are subjected to different regulatory requirements than other businesses. The Supreme Court precedent in this field makes clear that making such a showing is often quite straightforward at the summary judgment stage. Nevertheless, such a showing still must be made and at this point it has not been.

The defendants have attempted to offer some evidence regarding the as-applied challenge to the denial of the application, but have done so by inviting the Court to consider and accept evidence outside of the pleadings, and to disregard the facts and allegations that have been proffered to dispute that evidence – which is all the plaintiffs need to in filing their complaint. Such an assessment of the

evidence in the manner invited by the defendants is inappropriate in a motion to dismiss, and should await a motion for summary judgment, at which time it is expect that the defendants would be prepared to offer evidence in response to the plaintiffs' facial challenge to the ordinance, and the manner in which it was applied to their application for a special exception.  Accordingly, the motion to dismiss the plaintiffs' First Amendment claims will be denied at this point.

### B.     Procedural Due Process

Next, the defendants have challenged the sufficiency of the plaintiffs' claims that the decision to deny the application for a special exception violated the plaintiffs' right to procedural due process.

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  In order to make out a claim for a violation of procedural due process, a plaintiff must allege three elements:  (1) that the defendant was acting under color of state law; (2) that the defendant deprived him of a property interest; and (3) the state procedures for challenging the deprivation did not satisfy the requirements of procedural due process.  *Midnight Sessions, Ltd. v. City of Phila.*, 945 F.2d 667, 680 (3d Cir. 1991), *overruled on other grounds by United Artists Theatre Circuit v. Twp. of Warrington*, 316 F.3d 392 (2003); *see also Parratt v. Taylor*, 451 U.S. 527, 536-37 (1981).  When a state "affords a full judicial mechanism with which to

27

challenge the administrative decision" at issue, it provides adequate procedural due process, irrespective of whether the plaintiffs avail themselves of that process. *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 597 (3d Cir. 1995), *overruled on other grounds by United Artists*, 316 F.3d 392; *see also Midnight Sessions*, 945 F.2d at 681 ("The availability of a full judicial mechanism to challenge the administrative decision to deny an application, even an application that was wrongly decided, preclude[s] a determination that the decision was made pursuant to a constitutionally defective procedure.").

The plaintiffs do not adequately argue that the state does not provide adequate means of challenging the ZHB's decision, and it would appear that such an assertion would be baseless. In *Bello v. Walker*, 840 F.2d 1124 (3d Cir. 1988) *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392 (3d Cir. 2003) the Third Circuit Court of Appeals found that Pennsylvania state procedure for challenging an administrative zoning decision was sufficient to meet constitutional due process requirements. *Bello*, 840 F.2d at 1128. The plaintiffs have similarly done nothing to suggest that they lacked adequate means of challenging the ZHB's decision in state court, and the Court finds insufficient allegations to support a procedural due process claim based on the Township's decision to deny the plaintiffs' application for a special

exception in this case.   The defendants' motion to dismiss the procedural due process claim will, therefore, be granted.

## C.    Equal Protection

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Cons. Amend. XIV.  This is "essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). However, courts are hesitant to overturn governmental action on the grounds that it denies equal protection of the laws:

> The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted. Thus, we will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.

*Vance v. Bradley*, 440 U.S. 93, 97 (1979).

"Like other economic and social legislation, land use ordinances that do not classify by race, alienage, or national origin, will survive an attack based on the Equal Protection Clause if the law is 'reasonable, not arbitrary' and bears 'a

rational relationship to a (permissible) state objective.'" *Congregation Kol Ami v. Abington Twp.*, 309 F.3d 120, 133 (3d Cir. 2002) (quoting *Village of Belle Terre v. Boraas*, 416 U.S. 1, 8 (1974)).   However, land use regulations still must possess a legitimate interest in promoting public health, safety, morals, and general welfare in order to pass scrutiny.   *Id.* (citing *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926)).   This review is "highly deferential" and "very forgiving" *Id.* at 134, 135.

With respect to their equal protection claim, the plaintiffs have merely alleged that they were treated "differently from others similarly situated without a rational basis for doing so."  (Am. Compl., ¶ 123.)  The plaintiffs then purport to substantiate their equal protection claim by alleging that the defendants failed to meet some of the deadlines that the Township imposed upon itself for hearing and resolving zoning issues.   (Am. Compl., ¶¶ 125-127.)   It is not clear how these alleged delays are even relevant to an equal protection claim, as the plaintiff does not claim that they were the only parties who had ever had their application acted on in such way.   The plaintiffs' own allegations acknowledge that they are not members of a suspect class, and that the official action being challenged need only bear a rational relationship to a legitimate government purpose. *Clark v. Jeter*, 486 U.S. 456, 461 (1988).

The plaintiffs' amended complaint simply does not allege sufficient, plausible facts in support of an equal protection claim.  At the outset, the plaintiffs do no more than to baldly allege that they were treated differently than other similarly situated persons, yet the plaintiff includes no factual detail that could support this assertion.  Furthermore, mere review of the amended complaint itself reflects the plaintiffs' own admission that the ZHB provided several reasons for its adverse decision which would reflect a rational basis for denying the plaintiffs' application.  The paucity of plausible factual allegations supporting this claim, even in a complaint that has been amended once, causes the Court to find that this claim should be dismissed.  The main thrust of this action is the claim that the Township has violated the plaintiffs' rights under the First Amendment through its Zoning Ordinance and its application to the plaintiffs' intended use of their property to feature nude dancing.  The plaintiffs' equal protection claim trails this central claim, and offers insufficient factual allegations of dissimilar treatment of similarly situated persons without a rational basis.  The equal protection claim will, therefore, be dismissed.

### D.    Substantive Due Process

In addition to bringing a claim for procedural due process, the plaintiffs also allege that the Township violated the plaintiffs' right to substantive due process under the law.  Substantive due process protects an individual against arbitrary

action of the government.   *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).

However, the Supreme Court has "repeatedly emphasized that only the most

egregious official conduct can be said to be arbitrary in the constitutional sense."

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotation marks

omitted).   Official conduct is sufficiently outrageous only when it shocks the

conscience."   *Id.* at 846-47.   Determining what shocks the conscience is not a

"precise" or technical exercise, *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285

(3d Cir. 2004), and the Court of Appeals has recognized that whether or not

conduct qualifies as conscience-shocking "varies depending on the context."

*United Artists*, 316 F.3d at 399 n.5.   The Supreme Court has noted that "conduct

intended to injure in some way unjustifiable by any government interest is the sort

of official action most likely to rise to the conscience-shocking level."   *Lewis*, 523

U.S. at 849.

Although commonly brought, substantive due process claims are often

unsuccessful in the context of land-use disputes.   In this regard, the Third Circuit

has cautioned that

> every appeal by a disappointed developer from an
> adverse ruling of the local planning board involves some
> claim of abuse of legal authority, but "[i]t is not enough
> simply to give these state law claims constitutional labels
> such as 'due process' or 'equal protection' in order to
> raise a substantial federal question under [42 U.S.C. §
> 1983]."

32

*United Artists*, 316 F.3d at 402 (quoting *Creative Env'ts v. Estabrook*, 680 F.2d 822, 833 (1st Cir. 1982)).   For example, municipal conduct that reflects an improper motive, without more, does not shock the conscience.  *Id.* at 400.   The Third Circuit agreed with the Eighth Circuit Court of Appeals' ruling that a municipality's bad-faith enforcement of an invalid zoning law would not support a substantive due process claim.   *Id.* (citing *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104-05 (8th Cir. 1992)); *see also Highway Materials, Inc. v. Whitemarsh Twp.,* 386 F. App'x 251, 257 (3d Cir. 2010) (observing that "a bad-faith violation of state law . . . does not meet the [conscience-shocking] standard").   This demanding standard "prevents [federal courts] from being cast in the role of a zoning board of appeals." *Id.*

The Third Circuit has also provided some guidance in terms of what might constitute conscience-shocking conduct.  For example, evidence of "corruption or self-dealing" might meet this standard.  *Eichenlaub*, 385 F.3d at 286.  Likewise, a municipal action that reflects "bias against an ethnic group" could shock the conscience.  *Id.* at 286.  The Court suggested that a "virtual taking" of property might satisfy this standard.  *Id.*  In addition, a municipality's land-use decision that is animated by "hostility to constitutionally-protected activity on the premises" might be sufficiently outrageous, in some situations, to rise to conscience-shocking conduct.  *Id.* at 285 (citing *Assocs. in Obstetrics & Gynecology v. Upper Merion*

*Twp.*, 270 F. Supp. 2d 633 (E.D. Pa. 2003) (denying motion to dismiss complaint in which the plaintiff alleged that the municipality selectively enforced zoning regulations to restrict access to legal abortions).

Of these examples, which are not exhaustive, only the latter is arguably relevant to this case. The plaintiffs substantive due process claim is predicated on the assertion that the defendants "sought to hamper development of plaintiffs' proposed adult entertainment facility in order to interfere with otherwise constitutionally protected activity of free speech at the Property." (Am. Compl., ¶ 130.) The plaintiffs directly allege that the defendants' opposition to their proposed use of the property was based on an aversion to constitutionally-protected conduct. (*Id.*, ¶131.) The plaintiffs further allege that the defendants denied the application after engaging in purposeful delays, and participated in a scheme to grant a lease to a religious organization in order to interfere with the plaintiffs' lawful application. (*Id.*, ¶133.)

Although substantive due process claims face long odds, and must meet exacting standards of proof, out of an abundance of caution and reading the allegations in amended complaint in the plaintiffs' favor, the Court finds that the substantive due process claim should survive the defendants' motion to dismiss. The plaintiffs' have alleged facts to support their claim that the Township was motivated to deny their application by an animus toward constitutionally protected

conduct, albeit conduct that is at the outer perimeter of the First Amendment, and that the defendants plotted and schemed in order to effectuate that objective by misapplying the Township zoning regulations.  Although the defendants' have justified their handling of the plaintiffs' application for a special exception as a routine exercise of local government power over land usage and planning, the defendants have urged the Court to embrace arguments that rely on documents and evidence that fall outside of the pleadings.  The Court finds that it is more appropriate for such evidence to be considered through a motion for summary judgment, where it may be tested, and to cabin the Court's assessment of the complaint's sufficiency by focusing on the plaintiffs' allegations.  Those allegations articulate a claim based on the alleged selective enforcement of zoning laws to suppress protected activity.  Since the Court is unable to find that such an allegation could not support a substantive due process claim in this case, the plaintiffs' substantive due process claim set forth in Count II will be permitted to proceed.

### E.     Pennsylvania Constitution, Article I, § 7

In Count IV of the amended complaint, the plaintiffs have brought claims alleging that the defendants' actions violated their right to freedom of expression protected by the Pennsylvania Constitution.  The defendants have argued that this claim should be dismissed, but in so doing again invite the Court to rely on

evidence outside of the complaint, and to base a decision on the text of the Zoning Ordinance itself. The plaintiffs' allegations, however, are that the defendants' misapplied that zoning ordinance in an effort to suppress their constitutional rights, which are rights that also find protection under the Pennsylvania Constitution, Article I, §7. The parties engage in some discussion about the breadth of the Pennsylvania Constitution's protection of communication and expression, and a comparison of the state and federal constitutions, but the Court finds it unnecessary to unpack these issues at this juncture because the defendants have not demonstrated that the plaintiffs' claims fail to state a claim under state law, and because the Court has found that the plaintiffs' parallel First Amendment challenges should be considered through a motion for summary judgment, where evidentiary issues may be appropriately assessed. The Court reaches the same conclusion with respect to the claim brought under the Pennsylvania Constitution, and the defendants' motion to dismiss Count IV will be denied.

However, to the extent that plaintiffs are pursuing a pendent state constitutional claim for damages under the Pennsylvania constitution, it is clear that this claim fails, since "Pennsylvania law does not include a statutory equivalent to 42 U.S.C. § 1983, which provides a cause of action for damages because of a federal constitutional violation." *Gary v. Pennsylvania Dep't of Labor & Indus.*, No. 1:13-CV02540, 2014 WL

2720805, at *10 (M.D. Pa. June 13, 2014).  Accordingly, "[t]he prevailing view in this circuit is that 'Pennsylvania does not recognize a private right of action for damages in a suit alleging violation of the Pennsylvania Constitution.' *Gary v. Braddock Cemetery*, 517 F.3d 195, 207 n. 4 (3d Cir.2008); *see also; Farrell v. County of Montgomery*, No. 05–3593, 2006 WL 166519, at *3 (E.D.Pa. Jan.18, 2006); *Kaucher v. County of Bucks*, No. 03–1212, 2005 WL 283628, at *11 (E.D.Pa. Feb.7, 2005)." *Hamilton v. Spriggle*, 965 F.Supp.2d 550, 577 (M.D.Pa.2013), appeal dismissed (Dec. 23, 2013). *Gary v. Pennsylvania Dep't of Labor & Indus.,* No. 1:13-CV-02540, 2014 WL 2720805, at *10 (M.D. Pa. June 13, 2014)  Thus, the state constitution simply does not provide legal footing for any damages claims.  Yet while damages are not available on the pendent state constitutional claim, "[o]ther remedies, such as declaratory or prospective injunctive relief, could provide a remedy. While such remedies might not provide . . . 'complete relief' *see Bush*, 462 U.S. at 388, 103 S.Ct. 2404, they are, nonetheless, remedies under the Pennsylvania Constitution." *Jones v. City of Philadelphia*, 890 A.2d 1188, 1216 (Pa. Commw. Ct. 2006).  Therefore, the plaintiffs may still seek injunctive or declaratory relief under this pendent state claim.

### F.     42 U.S.C. § 1983

The defendants have moved to dismiss Count V of the amended complaint, which simply alleges that the defendants violated the plaintiffs' rights under 42 U.S.C. § 1983.   The defendants rightly note that § 1983 is merely a statutory vehicle for plaintiffs to brings claims alleging constitutional violations by state actors, and that § 1983 is not itself a font of substantive rights.  *See W.B. v. Matula*, 67 F.3d 484, 493 (3d Cir. 1995) (noting that 42 U.S.C. § 1983 does not confer substantive rights but "merely redresses the deprivation of . . . rights . . . created by the Constitution or federal statute.").  To the extent the plaintiffs have endeavored to bring substantive claim for a standalone violation of § 1983, the claim is meritless, and the defendants' motion to dismiss Count V will be granted.

### G.     Declaratory Judgment

Finally, the defendants have moved to dismiss Count VI, which seeks entry of a declaratory judgment that the Township's Zoning Ordinance and its application violated the plaintiffs' constitutional rights.  In moving to dismiss this count, the defendants offer no substantive argument, but instead rely on the arguments advanced in response to the plaintiffs' constitutional claims.  The Court does not find any basis to dismiss Count VI, which is in effect only a prayer for relief that summarizes the relief being sought for the violations alleged.  Accordingly, the defendants' motion to dismiss Count VI will be denied.

38

## V.   **CONCLUSION**

For all of the foregoing reasons, the defendants' motion to dismiss the plaintiffs' amended complaint will be granted in part and denied in part.   The plaintiffs' claims for procedural due process and equal protection violations will be dismissed, as will the plaintiffs' claims for an alleged standalone violation of 42 U.S.C. § 1983.   The motion will be denied with respect to the plaintiff's First Amendment and substantive due process claims, and the claim brought for violations of the Pennsylvania Constitution.

The Court is mindful that this action, which springs from a dispute between a real estate developer and a municipality over land use issues, has been pending since August 12, 2014.   The Court is committed to ensuring that the remaining claims receive prompt and fair consideration, and anticipates that some or all of the claims in this case may appropriately be considered upon a motion for summary judgment at which time evidentiary issues may be considered.   The Court has, through this decision, endeavored to frame the remaining issues and legal considerations for the parties in order to ensure that this action does not face further delay.   In furtherance of this objective, the Court will issue a separate order to schedule a telephone conference with the parties so that scheduling matters may be addressed, and to determine what discovery, if any, the parties believe may be necessary prior to setting a deadline for summary judgment motions.

An appropriate order consistent with this memorandum shall issue separately.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated:  December 14, 2016