# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRY SUTTON, d/b/a CINKAJ** | : | **Civil No. 1:14-CV-1584** |
| **BROGUE LIMITED PARTNERSHIP,** | : | |
| **BRENDA SUTTON d/b/a CINKAJ** | : | **(Magistrate Judge Carlson)** |
| **BROGUE LIMITED PARTNERSHIP,** | : | |
| **CHRIS CINKAJ, d/b/a/ CINKAJ** | : | |
| **BROGUE LIMITED PARTNERSHIP,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CHANCEFORD TOWNSHIP, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

Before the Court is the defendants' motion for summary judgment on the plaintiffs' remaining claims. The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the motion will be granted and the case will be closed.[1]

---

[1] This action was originally filed on August 12, 2014. The defendants moved to dismiss the original complaint on October 24, 2014. The District Court to which this matter was first assigned issued an opinion and order on May 16, 2016, granting the motion in part and denying it in part. Specifically, the Court granted the defendants' motion with respect to the plaintiffs' equal protection, due process, and regulatory taking claims without prejudice. In all other respects the motion was denied. (Doc. 16.)

## I.    **BACKGROUND**

The plaintiffs in this action are a group of real estate developers and co-owners of a business known as Cinkaj Brogue Limited Partnership (referred to collectively as "plaintiffs" or "developer"). At the time this lawsuit was initiated, the plaintiffs owned a shopping center development in Chanceford Township, York County, Pennsylvania (the "shopping center").[2] The plaintiffs allege that in 2013 their partnership was denied a zoning permit necessary to open a cabaret featuring nude dancing in the shopping center. The plaintiffs have sued Chanceford Township and several of its officials alleging that that Township's denial of their request for a special exception needed to open their intended adult entertainment business violated their rights under the United States and

---

The plaintiffs filed an amended complaint on June 28, 2016. (Doc. 19.) On July 18, 2016, the defendants filed a motion to dismiss. On August 5, 2016, the parties consented to proceed before the undersigned in this action, and on August 19, 2016, the case was reassigned to this Court. (Doc. 31.) Pursuant to an Order entered on December 14, 2016, the motion was granted in part and denied in part, with the plaintiffs' remaining claims being challenges to the Chanceford Township Zoning Ordinance and the denial of the plaintiffs' application to open a nude dancing establishment in their shopping center, as well as claims for substantive due process and violations of the Pennsylvania Constitution relating to the same land-use dispute. (Doc. 38.) The defendants filed the instant motion for summary judgment on August 1, 2017, and the motion became ripe on October 2, 2017.

[2] It appears that for a considerable period of time, and certainly during the time relevant to this action, the shopping center was at best in financial distress and at worst collapsing financially. At the time the plaintiffs' application for a special exception was pending, 70% of the shopping center was unleased and some tenancies, though under lease, remained empty. After the defendants' partnership defaulted on its financing obligations to a local bank, the shopping center was seized through commercial foreclosure proceedings. (Doc. 67, Ex. K.)

Pennsylvania Constitutions. The plaintiffs' chief argument seems to be that the Chanceford Township zoning ordinance operates as a prior restraint on protected speech, and thereby violates the First Amendment. The plaintiffs have also made a claim that the ordinance, as applied to their application, violated the First Amendment, in particular by arguing that the stated bases given for denying the special exception were pretextual cover for the real reason the permit was denied, namely, a moral aversion to allowing the plaintiffs' to open a business that featured nude dancing. The plaintiffs also claim that the defendants violated their right to substantive due process in that the land-use decision was "conscience shocking", and that the defendants violated similar prohibitions contained in the Pennsylvania Constitution regarding freedom of expression. The plaintiffs seek damages and declaratory relief.

The plaintiffs own property identified as 2514 Delta Road, Chanceford Township, York County, which is where the shopping center is situated. Chanceford Township is a township organized and existing under the laws of the Commonwealth of Pennsylvania. On April 10, 2006, the Township, acting under the Pennsylvania Municipalities Planning Code, 53 P.S. §§ 10101 et seq., adopted the ordinance known as the Chanceford Township Zoning Ordinance (the "Ordinance"). Section 513.C gives the Chanceford Township Zoning Hearing Board (the "ZHB") exclusive jurisdiction to rule on all zoning applications for uses

pursuant to the Ordinance. (Doc. 67, Ex. D, Zoning Ordinance.) Section 513.C.2 specifies that collectively and individually, the members of the ZHB have the authority "to hear and decide special exceptions upon which the Board is required to pass" under the Ordinance. (*Id.*)

The plaintiffs' property is located in the General Commercial Zone in the Township and has been developed into a small shopping center that includes businesses offering goods for sale, as well as service businesses that include a bank. The Ordinance provides that the General Commercial Zone in the Township allows for the use of property for an "Adult Oriented Facility" only under Special Exception as shown in Table 203.1 and Article IV of the Ordinance.

The Ordinance defines "Adult Oriented Facility" to mean any "establishment open to the general public or a private club open to members except person under the age of eighteen (18) years, which is used and occupied for one (1) or more of the following activities: . . . ADULT CABARET – An establishment, club tavern, restaurant, theater or hall which features live entertainment distinguished or characterized by an emphasis on sexual conduct or sexually explicit nudity." (Zoning Ordinance § 602.)[3] The plaintiffs' intended to use the property to operate an Adult Cabaret.

---

[3] Also included among the businesses defined as "Adult Entertainment Facilities" are Adult Book Stores, Adult Massage Parlors, and Adult Theaters. (*Id.*)

Section 407 of the Ordinance specifies that the manner of operation of an "Adult Oriented Facility" is regulated under the Ordinance. Section 407 sets forth the general and specific requirements that must be met in order for members of the ZHB to approve a special exemption for an "Adult Oriented Facility" under the Ordinance. These requirements provide that no materials, merchandise, film or service offered for sale or view shall be displayed or represented outside of the building; that all Adult Oriented Facilities will be windowless or have opaque coverings over the windows and doors; that no sign shall be erected depicting the types of goods or services offered in the establishment; that signage be posted restricting access to adults only and warning others that they may be offended upon entry; establish parking requirements; and include restrictions on locating Adult Oriented Facilities at least 1,000 feet from schools churches. (Zoning Ordinance § 407.)

Section 502 of the Ordinance provides the guidelines that govern uses permitted by special exception, and requires, *inter alia*, that the proposed use meets drainage requirements; that the proposed use will not create traffic congestion; that the proposed use has made adequate provision for disposal of sewage; and that the proposed use is "in harmony with the orderly and appropriate development" of the zone. (Zoning Ordinance § 502.) Section 502.2 of the Ordinance, in turn, sets forth the requirements for special exceptions and provides that "For any use

permitted by special exception, a special exception must be obtained from the Zoning Hearing Board." (*Id.*) That section further provides that "All applicants for a special exception shall be referred to the Planning Commission for a report. The Chairman of the Planning Commission shall insure that a copy of its report is delivered to the Township Secretary for inclusion in the permanent record of the application, to the Zoning Officer and to the Zoning Hearing Board." (*Id.*)

The Ordinance also sets forth a number of specific requirements that govern hearings for special exceptions conducted by the ZHB, and purports to confer certain rights upon applicants or appellants. Among the requirements is one that requires the ZHB to hold a hearing within 60 days of the date of the applicant's request for a hearing, and provides that when a hearing is not held within this 60-day period, a decision shall be "deemed to be rendered in favor of the applicant, unless the applicant has agreed in writing or on the record to an extension of time." (Am. Compl., ¶ 61 and Ex. R.)

On February 11, 2013, plaintiff Terry Sutton asked the Chanceford Township Solicitor, Timothy Bupp, about the prospect of opening an adult entertainment facility in the Township, specifically at the property, with live nude dance performances. The solicitor invited Sutton to attend a meeting of the Board of Supervisors that night. (Am. Comp., ¶ 91.) At that meeting, plaintiff Sutton told the Board that there was someone interested in subleasing space in the

property to private groups with BYOB privileges. Solicitor Bupp informed Sutton that pursuant to the Ordinance, the plaintiffs "would need to apply to the Zoning Hearing Board for special exception for any proposed restaurant or commercial use at which time the board would determine the conditions of use." (*Id.*, ¶ 92.)

On March 12, 2013, the plaintiffs submitted an application for a special exception pursuant to Section 203 of the Ordinance to the ZHB seeking to make use of the property as an Adult Oriented Facility. (Am. Compl., Ex. F.) The application specifically disclosed the plaintiffs' intention to use the property to operate as an "Adult Cabaret," as defined in the Ordinance, "featuring live nude dancers." (Am. Compl., ¶ 80.) The application disclosed the plaintiffs' intention to "not offer materials, merchandise, film, or service for sale, rent, lease, loan or for view outside of a building or structure." (*Id.*, ¶ 81.) The application stated that the plaintiffs intended to "establish a membership requirement for entry into the facility and with ten (10) separate rooms for private entertainment." (*Id.*, ¶ 82.) The application contained additional information with respect to the décor to be implemented, discretion with respect to signage, signs restricting admission to adults, the distance of the facility from any school or church, and regarding improvement of parking spaces in conformity with the Ordinance. (*Id.*, ¶¶ 83-87.)

The plaintiffs' application was first formally addressed on April 16, 2013, during a Township Planning Commission meeting. At that time, Terry Sutton and

the property owner's attorney, Chris Vedder, explained specifics of the application and its exhibits and answered questions asked by the Commissioners and the general public. (Am. Compl., Ex. V.) During the public comment period that followed, the chair of the Planning Commission, John Shanbarger, referred to Section 102 of the Ordinance that states that the purpose of the Ordinance is the public welfare, safety, morals and general welfare and opined that "There is nothing stated tonight that you are meeting very many of these, if any." (*Id.*, ¶ 96 and Exs. V, U.) Following two hours of testimony and dissenting opinions from opponents of the application, many of whom offered morality-based arguments in their opposition, the Chanceford Township Planning Commissioners unanimously recommended that the ZHB reject the plaintiff's application for permission to open an adult-oriented facility. (*Id.*, ¶ 97 and Ex. V.)

During a meeting of the Township Planning Commission on or around May 21, 2013, defendant Jeff Koons, a zoning officer for the Township, requested the help of the Planning Commission to determine which sections of the Ordinance were relevant to proving noncompliance with the plaintiff's application for a permit. (*Id.*, ¶ 100 and Ex. X.)

During a meeting of the ZHB on May 23, 2013, Defendant Bupp, the Township Solicitor, provided legal advice to members of the ZHB, and advised them that their consideration of whether or not to grant the special exemption must

focus on determining whether the proposed use of the property was a permitted use under the Ordinance, and whether the proposed use was of the same general character as other uses permitted in the applicable zone. (*Id.*, ¶ 107.) During the public deliberations that took place during this meeting, attendees urged the application be denied because the proposed cabaret was "immoral" or "criminal" or ran afoul of the "character and nature . . . in the neighborhood" or was "not appropriate for the community." (*Id.*, ¶ 108.)

The ZHB met on June 17, 2013, during which time the plaintiff, through counsel, argued that denial of the special exception would constitute regulation of the proposed use based on the content of expressive conduct or speech, which would violate the United States Constitution. (*Id.*, ¶111.) A little more than a month later, on July 22, 2013, Terry Sutton appeared before the ZHB again, during which time the ZHB heard additional complaints by community members about the proposed use of the property. (*Id.*, ¶ 113.) On or around July 25, 2013, the ZHB voted unanimously to reject the plaintiffs' application for a special exception. (*Id.*, ¶114.) On August 15, 2013, the ZHB issued a written decision that memorialized the denial. (Doc. 67, Ex. K.) The plaintiffs assert that the denial of their application was improper, untimely and unconstitutional, and that it had the effect of depriving them of "presenting the Constitutionally protected speech and expression they desire to provide," (*Id.*, ¶ 117), causing them financial harm.

Review of the decision itself, however, reveals that it does not purport to be based upon the nature of the expressive activity of nude dancing.[4] To the contrary, the decision rests upon a number of factual findings and conclusions in its determination that the plaintiffs failed to meet their burden, all of which are unrelated to the expressive nature of the proposed activity. For example, the ZHB concluded that because the plaintiffs proposed to establish a nude dancing business within a shopping center, the use also needed to conform to the regulations governing tenants on the premises, and concluded that under no reasonable definition could a cabaret be considered to be a "store." (Doc. 67, Ex. K, at 13-14.) In addition, and in our view most importantly, the ZHB found that the plaintiffs had failed to come forward with evidence sufficient to meet the ground water discharge requirements of the proposed use – instead, the plaintiffs simply rested on the fact that the shopping center had been approved at the time of its development, and therefore concluded that their proposed use would satisfy these

---

[4]  The ZHB did find that the proposed use as both a nude dancing venue and a BYOB "bottle club" appeared to violate Pennsylvania law, which by statute prohibits these activities operating as one business. That statute prohibits bottle clubs from exhibiting "lewd or immoral" activity, including sexually explicit activity and nude dancing. 18 Pa. Cons. Stat. Ann. § 7329. Although the statute may arguably express a moral judgment regarding this kind of expressive activity, the ZHB's decision does not indicate that the ZHB based its decision on its or its members' alleged moral aversion to nude dancing, but simply on the fact that the Pennsylvania General Assembly had passed a law that barred the kind of business that the plaintiffs proposed to establish. Notably, the statute's constitutionality has not yet been successfully challenged.

requirements as well. However, as the ZHB noted in its decision, the shopping center had been planned and developed seven or eight years prior, at which time there were no plans to include an adult cabaret among the possible uses and the sewage uses and needs for this facility would be significantly greater than the needs of other facilities within this mall since it was anticipated that this facility could house 100 or more long-term visitors at any given time.

Likewise, the ZHB noted that the Zoning Ordinance required that the party seeking a special exception demonstrate that adequate provisions can and will be made to deal with sewage created by the proposed use. (*Id.* at 15.) In this regard, the ZHB noted that Mr. Sutton had merely represented that the sewage facilities for the existing premises were "adequate," without taking into consideration in any way the fact that the proposed use would be open up to 14 hours per day, and have up to 150 patrons at any given time, which was substantially different than any previous or current shopping center tenants. (*Id.*) In addition, the Ordinance provided that the applicant provide sufficiently detailed information concerning studies and data to allow the ZHB to conclude that the project would comply with DEP regulations and the Chanceford Township Sewage Permit Ordinance, and the ZHB found that none of this information was provided as part of the application.

Finally, the ZHB found that because the proposed nude dancing venue was to be operated as a BYOB "bottle club", Pennsylvania law actually prohibited the

proposed use of the property, referring to 18 Pa. Cons. Stat. Ann. § 7329. That statute prohibits a bottle club from operating in connection with "lewd, immoral or improper entertainment," which is defined by statute to include sexually explicit activity including nude dancing. The ZHB noted that the statute prohibited these uses in conjunction with one another because of the potential for nuisance. The ZHB found that the proposed use would thus violate Pennsylvania statutory law, and therefore identified this potential violation as a fourth basis to deny the application.

Having found that the plaintiffs failed to meet four specific, objective requirements of the ordinance, the ZHB found it unnecessary to review evidence and argument from parties protesting the proposed use, or to determine whether the objecting parties had met their own burden of proving that the proposed use would have a generally detrimental effect on public health, safety and welfare, or whether it would conflict with other policies provided for by the Ordinance. (*Id.* at 15-16.)

The plaintiffs chose not to appeal the ZHB's adverse decision to state court, electing instead to file this federal lawsuit. The plaintiffs initiated this action by filing a complaint on August 12, 2014. (Doc. 1.) The complaint named as defendants the Township, its Solicitor, members of the Township's Planning Commission, Zoning Hearing Board, and Board of Supervisors, a Zoning Officer and the Township Engineer. The plaintiffs sought a declaration that the denial of

the requested permit was unconstitutional and that the Ordinance itself was facially unconstitutional as an unlawful restraint on protected expressive activity. The plaintiffs additionally sought damages for the claimed constitutional violations, including violations of the First and Fourteenth Amendments of the United States Constitution, a claim for a regulatory taking, and violations of the Pennsylvania Constitution. Following the District Court's ruling on the defendants' initial motion to dismiss, the plaintiffs filed an amended complaint on June 28, 2016. The defendants moved to dismiss the amended complaint on July 18, 2016, and that motion became ripe on October 27, 2016.

By Order entered on December 14, 2016, the Court granted the motion in part and denied it in part. Specifically, the Court dismissed the plaintiffs' claims alleging violation of their right to equal protection, procedural due process, and a standalone claim under 42 U.S.C. § 1983. (Doc. 38.) The Court denied the motion as to the plaintiffs' claims alleging violation of their right to substantive due process, as well as their facial and as-applied First Amendment claims. The Court also denied the motion with respect to the plaintiffs' request for a declaratory judgment, and claim that the ZHB's decision violated the Pennsylvania Constitution.

Following the conclusion of the discovery, the defendants filed the instant motion for summary judgment. (Doc. 67.) Thereafter, the plaintiffs – who

apparently had taken little discovery in this case up to this point – sought an enlargement of the discovery period in order to develop evidence to oppose the motion. The Court entered an Order extending the discovery period, and staying further briefing pending the conclusion of discovery. (Doc. 88.) Thereafter, the plaintiffs filed a brief in opposition to the motion for summary judgment on December 20, 2017, and the defendants filed their reply on January 5, 2018. (Docs. 91, 94.) The motion is now fully briefed in ripe for disposition.

## III.  STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." *Univac Dental Co. v. Dentsply Int'l, Inc.*, No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient

evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. *Anderson,* 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252*; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light

most favorable to the party opposing the motion." *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." *Countryside Oil Co., Inc. v. Travelers Ins. Co.,* 928 F.Supp. 474, 482 (D.N.J.1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." *Thimons v. PNC Bank, NA*, 254 F.App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denials . . . ." *Fireman's Ins. Co. Of Newark NJ v. DuFresne*, 676 F.2d 965, 968 (3d Cir. 1982); *see Sunshine Books, Ltd. v. Temple University*, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." *Lockhart v. Hoenstine*, 411 F.2d 455, 458 (3d Cir. 1969) (citation omitted). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985) (citing *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981)).

## IV.  DISCUSSION

### A.      Plaintiffs' First Amendment Claims

The plaintiffs argue that the Township's Zoning Ordinance, and its application to their request for a special exception to open an Adult Oriented Facility as defined under the Ordinance, violated their rights under the First Amendment to the United States Constitution.  The plaintiffs argue that the Ordinance itself operates as a prior restraint upon protected expressive activity, and the plaintiffs contend that the Township's denial of the application was itself unconstitutional because it was based on sham justifications that were pretext for an impermissible effort to disallow the plaintiffs from opening a business that featured protected expressive activity that the defendants found immoral or distasteful.

The Township disputes both of these assertions, and argues that the Court should decide, based on the record that the parties have developed, that the plaintiffs' facial and as-applied challenges to the Ordinance are meritless under prevailing Supreme Court precedent.  According to the Township, this case boils down to a straightforward dispute over a zoning decision,  a customary function of local municipal governance, and in no way implicates or runs afoul of the First Amendment.  The defendants further insist that the zoning decision in this case had nothing at all to do with the plaintiffs' intended use of the property as a nude

dancing venue, and was focused solely on matters such as water usage and potential secondary effects relating to the proposed use, as well as a finding that a nude dancing venue could not be considered a "store" and therefore was not an appropriate use within the plaintiffs' shopping center.

### 1.    Facial Challenge

More than ninety years ago, the United States Supreme Court "broadly sustained the power of local municipalities to utilize the then relatively novel concept of land-use regulation in order to meet effectively the increasing encroachments of urbanization upon the quality of life of their citizens." *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 73 (1976) (citing *Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926)) (Powell, J. concurring).  In finding that zoning regulations were a permissible exercise of the police function, the Court recognized the practical considerations that justified such power:  "[W]ith the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities." *Euclid*, 272 U.S. at 386-87.  However, in order for such regulations be permissible, the Court established some initial boundaries, noting that restrictions on the free use of land must find justification in "some aspect of the police power, asserted for the public welfare." *Id.* at 387.  Courts were enjoined to judge the legitimacy of

restrictions by referring to all of the relevant surrounding circumstances and conditions, with a municipality's legislative judgment to control in cases "in which the validity of a particular zoning regulation is 'fairly debatable.'" *Young*, 427 U.S. at 74 (quoting *Euclid*, 272 U.S. at 387) (Powell, J., concurring).

The validity of the police power to implement and enforce local zoning ordinances has been challenged, however, in a number of ways, and particularly in the context of First Amendment expressive conduct that comes into conflict with land-use regulation and municipal planning efforts. These challenges have frequently arisen in cases similar to the present case, and involve zoning ordinances that prohibited, curtailed or substantially regulated the existence or operation of adult entertainment venues such as theaters, bookstores, cabarets, and similar establishments. Although there have been many decisions in this field that have shaped the legal landscape with respect to the validity of zoning regulations that place some degree of burden on protected First Amendment activity or business, the law in this field can be difficult to simply synthesize. This lack of clarity is reflected in the thorough and thoughtful briefs filed by the parties in this case, which often come to quite different conclusions about these legal precedents and their application in this particular case.

As a threshold matter, the Supreme Court has held, and there really is no dispute between the parties, that nude dancing is expressive conduct that "falls

only within the outer ambit of the First Amendment's protection." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (plurality) (citing *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565-66 (1991); *see also Schad v. Mount Ephraim*, 452 U.S. 61, 66 (1981) ("nude dancing is not without its First Amendment protections from official regulation."). Accordingly, it is also true that although nude dancing and other forms of erotic entertainment are entitled to some degree of First Amendment protection, the law is clear that cities and municipalities are not powerless to enact regulations that impose some burdens on such establishments, provided that the regulations are appropriately tailored.

The Supreme Court has long held that "regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46-47 (1986); *see also Mitchell v. Comm'n on Adult Entertainment Establishments of State of Del.*, 10 F.3d 123, 130 (3d Cir. 1993). "On the other hand, so-called 'content-neutral' time, place and manner regulations are acceptable to long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Renton*, 475 U.S. at 47. In other words, regulations that are enacted to restrain speech based on its content are subject to strict scrutiny, whereas content-neutral regulations are subject to intermediate scrutiny.

20

Additionally, with respect to businesses that "purvey sexually explicit materials, zoning ordinances designed to combat the undesirable secondary effects of such businesses are to be reviewed under the standards applicable to 'content-neutral' time, place, and manner regulations. *Id.* at 49; *see also Mitchell*, 10 F.3d at 130 ("[I]f the regulation's predominate purpose is the amelioration of socially adverse secondary effects of speech-related activity, the regulation is content-neutral and the court must measure it against the traditional content-neutral time, place, and manner standard."). The Third Circuit Court of Appeals has interpreted this guidance to mean that under *Renton*, "reasonable time, place, and manner regulations of protected speech are valid if: (1) they are justified without reference to the content of the regulated speech; (2) they are narrowly tailored to serve a significant or substantial government interest; and (3) they leave open ample alternative channels of communication." *Mitchell*, 10 F.3d at 130.

In keeping with these standards as they developed, the Supreme Court has on a number of occasions found that municipalities may regulate in this field provided that the regulations in question are aimed at avoiding negative secondary effects rather than squelching speech or expressive activity based on its arguably offensive content. *See, e.g., City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002) (reversing and remanding lower court rulings that invalidated city ordinance prohibiting operation of multiple adult businesses located in a single

building, finding that the city could lawfully rely upon earlier factual findings to justify its regulations); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 570-71 (1991) (upholding law prohibiting public nudity as applied to adult entertainment venues as part of the part of the police power to provide for public health, safety and morals); *Renton*, 475 U.S. 41 (1986) (upholding ordinance prohibiting adult theaters from locating within 1,000 feet of any residential zone, church, park or school); *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50 (1976) (upholding Detroit ordinance prohibiting adult theater within 1,000 feet of any two other "regulated uses" or within 500 feet of any residential zone).

Notably, in the foregoing cases, courts typically were presented with a record of the bases for the municipal ordinances being challenged.  In each case cited, the Supreme Court found that some record evidence supported the municipalities' stated efforts to combat secondary effects of adult entertainment venues on the surrounding community.  For example, in *Renton*, the Court held that the municipality was permitted to rely on evidence that is "reasonably believed to be relevant" for demonstrating a connection between the speech being regulated and a substantial, independent government interest.  475 U.S. at 51-52. In that case, the city intended its ordinance to combat crime rates, protect property values, and uphold the quality of the city's neighborhoods.  *Id.* at 47-49. In *Alameda Books*, the City of Los Angeles was seeking to combat crime rates that were found by one

earlier study to be correlated to having adult businesses in proximity to one another, and the Supreme Court held that the city could appropriately rely on such evidence in order to enact a regulation in furtherance of an important government interest despite some limitations in the study. 535 U.S. at 438-39. In *Alameda Books*, the plurality opinion made clear that municipalities must be able to articulate some reasoned basis for its regulatory action. Thus, interpreting *Renton*, the plurality observed that a municipality "may rely on any evidence that is 'reasonably believed to be relevant' for demonstrating a connection between speech and a substantial, independent government interest." 535 U.S. at 438 (citing *Renton*, 475 U.S. at 51-52). The Court cautioned that this does not mean "that a municipality can get away with shoddy data or reasoning." *Id.* Instead, "[t]he municipality's evidence must fairly support the municipality's rationale for its ordinance." *Id.* Plaintiffs may, if they are able, "cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings." If plaintiffs succeed in doing so, "the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance." *Id.* at 439 (citing *Erie v. Pap's A.M.*, 529 U.S. 277, 298 (2000) (plurality opinion). Although a municipality's burden may be low, and its decisions owed deference, there is still a limited evidentiary basis that is

required in considering whether a particular regulatory ordinance was properly enacted and applied as to proposed expressive conduct.

The Township argues that the regulations that its Zoning Ordinance place upon nude dancing should be considered content-neutral, and argues that its Ordinance is focused upon land usage and has only minimal impact on speech. The Township notes that the Ordinance does not purport to ban nude dancing or other forms of "adult entertainment," but merely regulates where such businesses may operate, and furthers a substantial governmental interest. The Township notes that numerous other businesses that do not involve speech or expressive activity also must obtain a special exception to operate within the General Commercial district. In *Renton* the Supreme Court recognized that regulatory ordinances of this type may be deemed content-neutral where they do not ban the expressive activity altogether, but merely impose some time, place or manner restriction on it – which is essentially what the special exception requirement purports to be. *Renton*, 475 U.S. at 48; *Ben Rich Trading, Inc. v. City of Vineland*, 126 F.3d 155, 161 (3d Cir. 1997).

However, even if the regulation requires adult entertainment businesses to apply for and obtain a special exception in order to operate, the municipality still bears a relatively light burden of presenting evidence of "'incidental adverse social effect that provides the important governmental interest justifying' the content

neutral regulation and must be able to 'articulate and support its argument with a reasoned and sustained basis demonstrating the link between the regulation and the asserted governmental interest." *Ben Rich Trading*, 126 F.3d at 161 (quoting *Phillips v. Borough of Keyport*, 107 F.3d 164, 173 (3d Cir. 1997) (en banc). Although a municipality need not demonstrate such justification "at the time of adoption" of the ordinance, or "before taking [legislative] action," *Phillips*, 107 F.3d at 178, the municipality still must "shoulder the burden of building an evidentiary record that would support a finding that . . . [governmental] interests would be jeopardized in the absence of an ordinance", *id.* at 173.  The municipality may build such a record after it enacts the ordinance, but it nevertheless still bears this burden, however minimal.

On the basis of a more fully developed record, we are now able to consider the defendants' assertion that the Zoning Ordinance is an entirely constitutional time, place and manner limitation on certain expressive activity – and other non-expressive land uses.  The defendants have met their burden of coming forward with some evidence of the factual findings and legal rationale that informed the Township's decision to amend the Ordinance years before the plaintiffs approached the ZHB with a request for a special exception to operate a nude dancing venue in the shopping center.  For example, although their historical memory is somewhat hazy and there is a lack of documentary evidence from the

time the Ordinance was amended, the defendants have offered affidavits from several key players at that time, all of whom have attested to the content-neutral and legitimate reasons that inspired the Township to update its existing land-use regulations to account for new uses and to ensure the Township was in a position to regulate orderly growth of the community.

John Klinedinst, who was at all relevant times the Chanceford Township Engineer, attests that the Township became interested in or around 2000 in expanding the Zoning Ordinance to include uses that had not previously been considered. (Doc. 67, Ex. B, Klinedinst Aff. ¶2.) Similarly, David Warner, the Township's Chairman of the Board of Supervises, attested that in the late 1990s, Chanceford Township became aware that neighboring townships had begun receiving applications for adult-oriented facilities, and realized that the Township had no provisions for such use. ((Doc. 67, Ex. C, Warner Aff. ¶¶ 1-2.)

The Board of Supervisors requested that Klinedinst review the zoning ordinances that were in place in other communities, or with which he was familiar, in order to develop a template for proposed amendments to the Chanceford Township Zoning Ordinance. (Klinedinst Aff. ¶ 4.) Mr. Klinedinst attests that he reviewed the language of ordinances of other municipalities that had addressed the zoning regulation of adult-oriented facilities in order to borrow language that would help to provide for the use and also ensure orderly growth within the

township. (*Id.* ¶ 5.) Additionally, Mr. Klinedinst sought to secure language that would give due consideration for other uses in the context of traditional concerns regarding noise, traffic, crime and safety. (*Id.*) The defendants have submitted a copy of a draft ordinance that was marked up indicating changes that were being considered as part of this process. (Doc. 67, Ex. F.) Notably, at the time the Township was endeavoring to update its Ordinance to provide for additional uses and to see in place certain requirements regarding their location or operations, there were no applications pending for adult-oriented facilities. (Klinedinst Aff. ¶ 6; Doc. 67, Ex. G, Aff. of Gilbert Malone, ¶ 8.)

The defendants have represented that at no time was any concern raised by the Township regarding a restriction on activity taking place within an adult-oriented facility, and, indeed the Township has represented that rather than endeavoring to prohibit such use, the Township was simply endeavoring to find a way to account for such possible use and to integrate such use within the municipality's overall zoning scheme. (Klinedinst Aff. ¶ 10.) To this end, Mr. Klinedinst testified that he believes he took the Adult Oriented Facility language directly from language he found from another municipality's zoning ordinance. (*Id.* ¶ 7.)

Mr. Klinedinst has attested that the principal concerns that came up regarding the potential amendments to the Zoning Ordinance had to do with the

secondary effects associated with Adult Oriented Facilities, including the potential for increased crime, and the impacts that such businesses could have on surrounding property use and value. (*Id.* ¶12.) Likewise, Chairman Warner attested that he recalled the primary concerns that the Board had regarding Adult Oriented Facilities had to do with orderly growth, traffic, health, safety, and crime, as well as impact to property values. (Warner Aff. ¶¶6, 10.)

The Township also relied on the advice of legal counsel at the time that it was considering amendments to the Ordinance, principally from its Township Solicitor, Gilbert Malone. Both Chairman Warner and Solicitor Malone have offered affidavits in which they state that the Township was made aware of studies that had been performed in other municipalities that drew a link between the presence of Adult Oriented Facilities and increases in crime and decreases in property values. (Warner Aff. ¶11; Malone Aff. ¶4.) Chairman Warner attested that the Township relied on these other studies in approving changes to the Ordinance in 2000. (Warner Aff. ¶¶11-12.)

The Township Solicitor, Mr. Malone, recalls that he reviewed the proposed amendments at the time to "ensure that the Ordinance was designed so that the constitutionally protected activities were protected" while at the same time allowing the Ordinance to "address the secondary effects of such uses." (Malone Aff. ¶5.) Solicitor Malone also apparently offered some information that he had

gleaned through his legal practice regarding a link between nude dancing and prostitution, which was one of the secondary effects that the Township has relied on in amending its Ordinance in order to enact appropriate regulations regarding the placement and requirements for Adult Oriented Facilities within the municipality. (Malone Aff. ¶¶ 7-9.) Solicitor Malone attested that he understood that a flat-out ban on expressive activity was not constitutional, but that "legitimate content-neutral concerns over secondary effects associated with such facilities was permissible." (*Id.* ¶10.)

Based upon his understanding of the Supreme Court's guidance in this area, and following his interactions with the Board of Supervisors and his analysis of the proposed language in the amended Zoning Ordinance, Solicitor Malone was "satisfied that the underlying motivation for the enactment of the Ordinance was to promote the orderly growth of the Township in general, which was consistent with the overarching purpose of the Ordinance." (*Id.* ¶11.) He also attested that he believed that the language of the amendments "met the legitimate concerns of the Township regarding increases in crime and decreases in property values, noise, traffic, etc." (*Id.*)

Rather than isolate Adult Oriented Facilities as a separate, *sui generis* use that was subject to its own particular requirements, the Township identified them as uses that would subject to special exception. By doing so, it was the

Township's intention "to provide all concerned citizens with notice [of the proposed use] so that in the event there is a challenge to a proposed use, both the Zoning Hearing Board and the general public have the opportunity to hear both proponents for the proposed use as well as any potential opponents." (*Id.*) In addition to Adult Oriented Facilities, other uses subject to special exception under the Ordinance are agricultural product sales and processing, automotive garages or service stations, bed and breakfasts, campgrounds, contractor's offices or shops, multi-family dwellings, multi-family conversions, industrial parks, junkyards, manufacturing buildings and facilities, mobile home parks, quarries, retail, restaurants, entertainment facilities, service facilities, general business facilities, and solid waste processing and disposal facilities. (Zoning Ordinance § 203.1.)

The defendants have thus offered testimonial evidence to explain the information that municipal leaders used to explore changes to their local land use regulations, identified the factual bases for the changes that were being considered at a time when no applications for adult-oriented facilities were pending, the legal guidance that was relied upon, and the content-neutral reasons given to justify subjecting adult-oriented facilities – and other special uses – to the special exception process. In the face of this evidence, the plaintiffs have done little other than to attack the credibility of those who offered affidavits, by casting doubt on their memories, or by suggesting that these proffered justifications are too flimsy to

be credited.  The plaintiffs have also taken issue with the fact that the affidavits were prepared in this case by counsel – but the plaintiffs have no answer for the defendants' response that all of the affiants have represented that they agreed with – and swore to – the representations that they made.  The plaintiffs argue that the evidence does not show that the defendants or their municipal leaders discussed the concerns they now claim to have had, and they highlight the fact that there are few, if any, contemporaneous records from the time that could substantiate the claims that the defendants are now making, such as board minutes or the like.  The plaintiffs thus argue that the defendants' evidentiary record is little more than a *post hoc* rationalization offered as cover for a thinly veiled attempt to prohibit or chill protected speech within the township.

But after years of litigation and following an extension of time to allow the plaintiffs to pursue discovery the plaintiffs do not effectively demonstrate that an actual dispute exists that the defendants *did* consider evidence from other municipalities, and reasonably relied upon their ordinances in fashioning their own in order to contemplate and provide for some reasonable regulations regarding the placement of potential adult-oriented businesses within the township.  Moreover, even if the plaintiffs had sufficiently called into doubt the quality of the evidence or data that the defendants relied upon, which they have not, the defendants would simply have had to make a showing that there were legitimate reasons for

amending the ordinance, and the defendants have done so. The record indicates that the Township sought to update its local land-use regulations to contemplate the possibility that developers would seek to open adult-oriented venues within the municipality, and the record indicates that based upon the information that the Township had, it amended its ordinance to provide for such uses while seeking to minimize concerns regarding crime and diminished property values and ensure the orderly growth of their community. On the record before the Court, in light of the defendants' minimal burden to demonstrate legitimate reasons for amending its ordinance to subject adult-oriented facilities and a host of other non-standard uses to a special exception requirement, we find that the defendants have satisfied this requirement, and the plaintiffs' facial challenge to the Ordinance fails. The predominant purpose of the amendments to the Zoning Ordinance was on secondary effects caused by a variety of property uses, including Adult Oriented Facilities, and the amendments are content-neutral time, place and manner restrictions that are permissible under the law.

### 2.    As-Applied Challenge

The plaintiffs have also attacked the decision to deny their application by bringing an as-applied challenge to the ZHB's stated rationale. In making this argument, the plaintiffs argue that the ZHB's assertion that a nude dancing venue does not constitute a "store" as required for placement in a shopping center is

spurious because numerous other businesses have operated within the shopping center that do not seem to meet the customary meaning of a "store" – a term that, moreover, is nowhere defined within the Ordinance. The plaintiffs also seem to dispute the ZHB's finding that the plaintiffs did not meet their burden of demonstrating that adequate sewerage and water capabilities existed to accommodate that proposed use, though crucially the plaintiffs point to no evidence to contradict the ZHB's finding on these objective criteria. Finally, the plaintiffs argue that the ZHB's citation to a Pennsylvania criminal statute as a basis justifying denial of the permit should be deemed inadequate as a matter of law, since language similar to that used in the statute has been ruled unconstitutionally overbroad in another federal court decision.

The plaintiffs have not spent much time focusing on their as-applied, and as best we can tell are simply arguing that the ZHB's actual decision was motivated by an unlawful desire to quash their right to engage in or promote expressive activity because the ZHB disfavored the message, rather than for the reasons that were actually articulated. In short, the plaintiffs argue that the reasons given in support of the ZHB's decision were no more than pretextual cover for unlawful viewpoint-based decision to deny their rights.

An as-applied challenge to a zoning decision based upon an otherwise constitutional ordinance argues that the law is unconstitutional as applied to the

litigant's particular speech activity, even though the law might be capable of permissible application to others. *See Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 803 and n.22 (1984); *id.* at 804 (recognizing that an ordinance may be invalid under the First Amendment if "applied to [a party] because of the views that they express"); *see also Brown v. City of Pittsburgh*, 586 F.3d 263, 289 (3d Cir. 2009) ("Even to the extent that the Ordinance is facially valid, it may be unlawful as applied.").

In this case, we believe that after several years of litigation, the plaintiffs' as-applied challenge collapses because despite our decision to permit the plaintiffs ample opportunity for discovery, including an extension of discovery, this challenge is simply unsupported by facts. The plaintiffs first argue that the shopping center in which the nude dancing venue was to be established has also been home to multiple businesses and offices that do not meet the definition of a "store" as that word is defined in dictionaries. But this was one of several reasons given for the ZHB's decision, and the plaintiffs have not pointed to any evidence to show that the ZHB granted special exceptions to other businesses that do not meet the definition of "store" as the ZHB read the term in two dictionaries. (Doc. 67, Ex. K, at 13.) Instead, the plaintiffs simply point out that other types of businesses, such as a pizzeria and a bank, also operated on the premises. We do not find that

this fact demonstrates that the ZHB's decision was pretextual, particularly as it was coupled with additional bases that the plaintiffs have failed adequately to dispute.[5]

In our view, the plaintiffs' as-applied challenge may well begin and end with the fact that the ZHB found that the plaintiffs had not satisfied their obligation to come forward with specific evidence showing that they could meet the sewer and water requirements that their facility would need. The defendants point out that these empirical requirements are set forth at Ordinance Sections 210.4(b)(1) and 502.4 (F) and are specific. The plaintiffs seem to argue that they met this burden because the shopping center had previously been authorized for development, but this fact does not obviate the need for the plaintiffs to demonstrate that their particular planned use – an Adult Oriented Facility that was projected to have up to 150 people inside at any given time – was also capable of meeting water and sewer needs based upon its anticipated use. According to the ZHB's decision, the plaintiffs offered nothing to satisfy this particular evidentiary burden, and the plaintiffs have not disputed that assertion in their opposition to the defendants' motion other than to argue repeatedly that they did meet all requirements – something that we do not find is borne out in the record with actual evidence.

---

[5]  Furthermore, the ZHB acknowledged that during its existence there had been other commercial interests operating at the shopping center that may not qualify as traditional stores, but the ZHB also pointed out that it "has never been asked to decide the appropriateness of any of the uses within the Shopping Center prior to this application." (Doc. 67, Ex. K, at 14.) The plaintiffs do not dispute this assertion.

There is simply nothing in the record to suggest that the ZHB's stated justification for denying the application for this reason was pretextual.

Finally, the ZHB based its decision in part on a finding that operating the proposed nude dancing facility as a BYOB "bottle club" as the plaintiffs intended actually would run afoul of Pennsylvania statutory law. As noted, 18 Pa. Cons. Stat. Ann. § 7329 prohibits a business operating as a "bottle club" from featuring "lewd, immoral or improper entertainment," which is defined to include nude dancing and other sexually explicit activity. The ZHB reasonably read the statute as operating to bar precisely the kind of activity and use that the plaintiffs' proposed, and there is nothing in the record to suggest that the ZHB or any of the defendants knew or should have divined that this statute might be subject to constitutional challenge – indeed, it does not appear anywhere that this issue even came up before the ZHB. The plaintiffs have pointed out that certain other similar statutes have been found to be constitutionally problematic, since the terms "lewd, immoral or improper" have been found to be impermissibly overbroad. *See Conchatta v. Miller*, 458 F.3d 258 (3d Cir. 2006). But the plaintiffs have not shown that the ZHB was aware of this decision, or that the ZHB should have interpreted this 2006 decision of the Third Circuit Court of Appeals invalidating a different Pennsylvania statute as having direct application to the plaintiffs' proposed use. The plaintiffs' argument, though interesting as an abstract legal

matter, does not undermine the ZHB's citation to this Pennsylvania law – which appears never to have been struck down – as an additional basis to deny the permit application.[6]

In sum, the defendants offered multiple legitimate reasons justifying its decision to deny the plaintiffs' application for a special exception, and the plaintiffs have not adequately contested these justifications, or identified evidence that could support a finding that these reasons were pretextual.

---

[6]  Interestingly, it appears that in 1998, the Pennsylvania Superior Court affirmed the conviction of defendants who had been convicted of operating a "bottle club" that offered lewd, immoral, or improper entertainment for profit or pecuniary gain. *Commonwealth v. Maker*, 716 A.2d 619 (Pa. Super. Ct. 1998).  The Pennsylvania Supreme Court granted an allowance of appeal "limited to the issue of whether 18 Pa. C.S.A. § 7329, Prohibition of certain types of entertainment on bottle club premises, violates the First Amendment freedom of expression." *Commonwealth v. Maker*, 725 A.2d 175 (Pa. 1999).  It does not appear that the Pennsylvania Supreme Court ultimately decided that question, and on November 27, 2000, the court entered a *per curiam* Order affirming the convictions without discussion.  Thus, so far as the Court can tell, Pennsylvania courts have not overturned or limited application of the statute, and in fact have upheld the statute in the face of a First Amendment challenge.  Notably, in this case the plaintiffs did not appeal the denial of their special exception application to the Pennsylvania state courts, where presumably the plaintiffs could have raised this issue and presented any constitutional arguments they may not be alluding to.  Whatever the potential merits of a constitutional challenge to this Pennsylvania statute's continued validity, we do not find that the plaintiffs have created a disputed issue over the stated reasons given by the ZHB for denying the permit application simply because one of the four grounds identified was a Pennsylvania criminal statute that has never been found to be an unconstitutional restraint on expressive activity.

### D. Substantive Due Process

The plaintiffs also allege that the Township violated the plaintiffs' right to substantive due process under the law by denying their application. Substantive due process protects an individual against arbitrary action of the government. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). However, the Supreme Court has "repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotation marks omitted). Official conduct is sufficiently outrageous only when it shocks the conscience." *Id.* at 846-47. Determining what shocks the conscience is not a "precise" or technical exercise, *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004), and the Court of Appeals has recognized that whether or not conduct qualifies as conscience-shocking "varies depending on the context." *United Artists*, 316 F.3d at 399 n.5. The Supreme Court has noted that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849.

Although commonly brought, substantive due process claims are often unsuccessful in the context of land-use disputes. In this regard, the Third Circuit has cautioned that

> every appeal by a disappointed developer from an
> adverse ruling of the local planning board involves some

claim of abuse of legal authority, but "[i]t is not enough simply to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under [42 U.S.C. § 1983]."

*United Artists*, 316 F.3d at 402 (quoting *Creative Env'ts v. Estabrook*, 680 F.2d 822, 833 (1st Cir. 1982)). For example, municipal conduct that reflects an improper motive, without more, does not shock the conscience. *Id.* at 400. The Third Circuit agreed with the Eighth Circuit Court of Appeals' ruling that a municipality's bad-faith enforcement of an invalid zoning law would not support a substantive due process claim. *Id.* (citing *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104-05 (8th Cir. 1992)); *see also Highway Materials, Inc. v. Whitemarsh Twp.,* 386 F. App'x 251, 257 (3d Cir. 2010) (observing that "a bad-faith violation of state law . . . does not meet the [conscience-shocking] standard"). This demanding standard "prevents [federal courts] from being cast in the role of a zoning board of appeals." *Id.*

The Third Circuit has also provided some guidance in terms of what might constitute conscience-shocking conduct. For example, evidence of "corruption or self-dealing" might meet this standard. *Eichenlaub*, 385 F.3d at 286. Likewise, a municipal action that reflects "bias against an ethnic group" could shock the conscience. *Id.* at 286. The Court suggested that a "virtual taking" of property might satisfy this standard. *Id.* In addition, a municipality's land-use decision that

is animated by "hostility to constitutionally-protected activity on the premises" might be sufficiently outrageous, in some situations, to rise to conscience-shocking conduct. *Id.* at 285 (citing *Assocs. in Obstetrics & Gynecology v. Upper Merion Twp.*, 270 F. Supp. 2d 633 (E.D. Pa. 2003) (denying motion to dismiss complaint in which the plaintiff alleged that the municipality selectively enforced zoning regulations to restrict access to legal abortions).

Of these examples, which are not exhaustive, only the latter is arguably relevant to this case. The plaintiffs' substantive due process claim is predicated on the assertion that the defendants "sought to hamper development of Plaintiffs' proposed adult entertainment facility in order to interfere with otherwise constitutionally protected activity of free speech at the Property." (Am. Compl., ¶ 130.) The plaintiffs directly allege that the defendants' opposition to their proposed use of the property was based on an aversion to constitutionally-protected conduct. (*Id.*, ¶131.) The plaintiffs further allege that the defendants denied the application after engaging in purposeful delays, and participated in a scheme to grant a lease to a religious organization in order to interfere with the plaintiffs' lawful application. (*Id.*, ¶133.)

Substantive due process claims face long odds, must meet exacting standards of proof, and following review of the record we find that the plaintiffs have not met these standards. The plaintiffs' have alleged that the Township was motivated

to deny their application by an animus toward constitutionally protected conduct, albeit conduct that is at the outer perimeter of the First Amendment, and that the defendants plotted and schemed in order to effectuate that objective by misapplying the Township zoning regulations, yet the plaintiffs can point to no actual evidence to support this assertion. The plaintiffs identify no statements by any decisionmaker tying the denial of the special exception application to moral distaste for nude dancing. As noted, we have found that the evidence supporting the ZHB's content-neutral reasons for their decision – most notably, the failure to meet water and sewage requirements – were entirely permissible grounds for the ZHB's decision, and the plaintiffs have not adduced evidence to dispute those objective reasons despite being provided multiple opportunities over the years to do so..

Furthermore, the plaintiffs' suggestion that the defendants unreasonably delayed a decision on the application is undermined by evidence showing that it was the plaintiffs who requested continuances of hearings. (Doc. 67, Ex. M.) It is difficult to perceive how the defendants' act of granting continuances that the plaintiffs themselves requested could amount to conscience-shocking behavior, and we do not find that the plaintiffs have shown that any delays that may have attended the special exception proceedings was conscience-shocking in any event. In the end, the evidence shows that Chanceford Township took steps to amend its

local zoning ordinance years prior to the plaintiffs' efforts to open a nude dancing establishment, and that they amended the ordinance after reviewing zoning regulations adopted by other communities, and on the basis of legal advice of counsel in a manner that was lawful. The evidence further shows that the ZHB denied the application in large part because the plaintiffs had failed to meet their own burden of demonstrating that the water and sewer needs associated with this proposed venue had been satisfied. And the record contains no evidence that any of the decisionmakers based their decision on a moral aversion to the type of entertainment that the plaintiffs proposed to offer in the shopping center.[7]

---

[7] In their efforts to argue about the inherent unfairness of the underlying decision, the plaintiffs also suggest that there may have been a scheme of some type to grant a sublease from York County, which had taken out space in the shopping center, to the SonLight Chapel, and that this sublease would later be offered as a reason to deny the plaintiffs' application because the Zoning Ordinance prohibits an Adult-Oriented Facility from operating within 1,000 feet of a church. (Zoning Ordinance § 407(g).) There is no evidence in support of this assertion, and we are confused by it. First of all, nothing in the ZHB's decision is based on the distance between the proposed space for the nude dancing establishment and the SonLight Chapel. Confusion over this issue may be based in part on the fact that the defendants repeatedly argue that the plaintiffs' proposed use would have been disallowed because of the proximity to the SonLight Chapel – even though this is not reflected in the ZHB's decision. As we understand it, at the time the plaintiffs applied for the special exception, SonLight Chapel had not finalized a sublease with York County to take over its space. So it is confusing that the defendants would suggest that SonLight Chapel's eventual formal subtenancy at the shopping center justifies the ZHB's decision, when that decision does not purport to be based on this factor at all.

It may be that despite not having a formal subtenancy, SonLight Chapel had moved into space leased by York County around the time the plaintiffs were seeking approval of their proposed use, and the defendants assert that the church

In short, although the plaintiffs are plainly aggrieved by the denial of their application, we do not find sufficient evidence to show that this denial was so arbitrary or improper that it shocks the conscience. Instead, it appears to be little more than a local land-use decision pitting a frustrated business against the ZHB and other local officials who had legitimate, objective, and content-neutral reasons for their adverse decision.

### E.     Pennsylvania Constitution, Article I, § 7

In Count IV of the amended complaint, the plaintiffs allege that the defendants' actions violated their right to freedom of expression protected by the Pennsylvania Constitution. This claim essentially parallels the plaintiffs' federal constitutional claims, and they have offered no other argument or evidence in support of it. Because we find that those federal claims fail on the record that the parties developed, and because the plaintiffs have offered no other arguments or evidence in support of this state-law claim, we find that the plaintiffs have failed to

---

was paying rent directly to the plaintiffs, who accepted it. The defendants thus argue that the plaintiffs doomed any chance that might theoretically have had to obtain a special exception because they did not oppose the church's subtenancy, which they had a right to do as the landlord of the shopping center. We find no reason to try to resolve this particular dispute between the parties, both because the distance between the subject storefront and the church was not a reason given to deny the plaintiffs' application, and because there is no evidence to support the plaintiffs' suggestion that the defendants were engaged in a scheme to put a church in the shopping center to foil the plaintiffs' plan to open a nude dancing venue.

demonstrate that there is a triable issue regarding claims based upon the Pennsylvania Constitution.

## V.    CONCLUSION

For all of the foregoing reasons, we find that the defendants have demonstrated that they are entitled to judgment as a matter of law on the plaintiffs' remaining claims, and the motion for summary judgment will be granted.   A separate Order directing judgment in the defendants' favor shall be entered separately.


*/s/  Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated:  March 21, 2018